In the Matter of the Accounting of PRESTON P. SATTER-
WHITE et al., as Executors of FLORENCE C. SATTER-
WHITE, Deceased, Respondents.

WILLIAM G. BROKAW, Appellant; LILLA B. RENSHAW
et al., Respondents.

(Argued June 4, 1933; decided July 11, 1933.)

*Archibald R. Watson, Ralph O. Willguss* and *Hyman W. Gamso* for appellant.

*C. Alexander Capron* and *W. Meade Keller* for Preston P. Satterwhite et al., as executors, respondents.

E. J. Dimock, Charles B. Lauren and Jeremiah Wood for Lilla B. Renshaw et al., respondents.

POUND, Ch. J. The question is whether taxes and carrying charges on unproductive real estate should be paid by the life tenant or apportioned to capital. This not unusual dispute between those entitled to the principal and those entitled to the income of a trust estate has been before us recently in *Matter of Jackson* (258 N. Y. 281). We there held on the authority of *Lawrence v. Littlefield* (215 N. Y. 561) and other cases cited that if

the language of the will indicates an intention of the testator to constitute an imperative power of sale and an equitable conversion of the real estate into personalty at the time of the testator's death, it must be presumed that while the trustees were converting the real estate into personalty the right of ,the life tenant to income was the same as if the fund had come into existence immediately after testator's death and that an exception to the general rule of loading on the life tenant charges of carrying unproductive real property pending a sale thus came into existence.

On the other hand, it was said that where there is no imperative power of sale or equitable conversion; where the testator authorizes the trustees to sell in their discretion, the only inference is that testator intended to benefit the principal of his estate and not the life tenants.

A simple and workable rule has been suggested. It provides that in all cases, except where the will otherwise provides, the proceeds of the sale of unproductive real property as between life tenant and remainderman shall be apportioned between principal and income. (Apportionment between Principal and Income of Proceeds Derived from the Sale of Unproductive Realty Held in Trust, 40 Yale Law Journal, 275, 278, note 18.)

Appellant contends in substance that *Matter of Jackson* (*supra*) tends to adopt the rule suggested above as an expression of the policy of this State. He concedes, however, that we have not gone so far as to adopt it. We still seek the intention of the testator as expressed in the language of the will, interpreted in the light of surrounding circumstances. Let us so consider the will before us.

Testatrix died May 1, 1927. She was possessed of personal property of the appraised value of approximately $5,000,000 and unproductive real estate used as family homes and not bought for speculation, as in the *Jackson*

*Case (supra)*, worth about $1,000,000 more. The unproductive real estate consisted of two parcels, the home at Great Neck, Nassau county, New York, known as " Martin Hall," having an appraised value of $970,000, and a winter residence at Palm Beach, Florida, having an appraised value of $590,000. " Martin Hall " was sold September 27, 1930, for $585,000 (sale confirmed December 31, 1930), and the Palm Beach property was sold December 23, 1929, for $425,000, including contents appraised at $62,176.50, aggregating a sum in excess of $900,000 for the unproductive real estate.

As to the Martin Hall property she had provided in her will:

" *Twenty-ninth.* * * * It is my will and I direct that my said husband have possession of ' Martin Hall,' its land and all the buildings thereon, for use and occupancy from the time of my decease down to the time when the sale of said property shall be carried out and effected as herein provided and said property is duly conveyed to the purchaser.

" I hereby direct my executors and trustees to sell at private sale or public auction within three years after my decease, for the best price and upon the best terms obtainable, my lands with the dwelling house and other buildings and improvements thereon erected, situated at or near Great Neck, Nassau County, New York, now known and designated as ' Martin Hall,' being one of the residences occupied by my husband, Preston P. Satterwhite, and myself since our marriage, and to place the proceeds thereof, whether cash or bond and mortgage, in the residuary fund of my estate."

The appellant, who has a life interest in a residuary trust under the will, objects to the carrying charges of the unproductive real estate, Martin Hall and Casa Florencia, amounting to $144,596.58 to the time of sale, being charged against income and contends that such sum should have been charged against principal.

As to Martin Hall, we have an imperative direction to the executors and trustees to sell within three years after testator's decease and place the proceeds in the residuary fund of the estate. This is to be offset by the direction that testator's husband shall have the use of the property until it is sold, within three years after her decease. Meantime the life tenant would pay the carrying charges quite independently of when that property became a part of the trust estate. From the end of three years after her death, May 1, 1930, until September 27, 1930, when Martin Hall was sold, there was an equitable conversion of the real estate into personalty. The learned Surrogate has held that from May 1, 1930, until the actual conveyance of Martin Hall the carrying charges should be charged to principal. This we think is the correct rule. The appellant says the apportionment should date from the day of death.

As to the Palm Beach property, known as Casa Florencia, the power of sale in the will applicable to this property is the general power of sale contained in the forty-fifth clause which reads as follows: " I authorize and empower my said executors and trustees and the survivor of the survivors of them, or the ones who shall qualify, for any purpose whatever which they, he or it may deem necessary, to sell and convey the whole or any part of my real property, not herein specifically devised, at such time or times, in such manner, and on such terms as to them, him or it shall seem proper;   *   *   *."

This is the widest and most discretionary language possible. It contains no words of direction which can be construed as evidencing an intent or desire that the property shall be sold before the trustees may deem it necessary. The property was sold December 23, 1929, two years and eight months after the death of the testator. It cannot be said that the trustees were unnecessarily dilatory in making the sale of costly Florida real estate. Contrasted with the imperative direction to sell Martin

Hall, the choice of language by testator seems judicious and well chosen to give the widest discretion without intimating any direction as to when they should act.

Furthermore, there is no reason why we should torture language to find an intent to do the right thing. The appellant was a brother of testator. He was not the chosen object of her bounty. He took but twenty per cent of the residuary trusts for his benefit during his lifetime. The special objects of Mrs. Satterwhite's solicitude were her sister, Lilla Dugmore, and her children. Lilla takes thirty-five per cent of the income of the residuary trusts. Testator was at pains to say in her will: " I have made the liberal provisions herein contained for my sister, Lilla Dugmore, and her children, for the reason that she has sustained great financial losses and her fortune has been greatly depleted, and I wish to give to her children that financial protection and support which she is now unable to give them." Mrs. Dugmore's children take the entire residuary estate.

As to her husband, he also is dealt with liberally. He takes forty-five per cent of the income of the residuary trusts.

In the cases cited *supra* special reasons, which were assumed to have influenced the intention of the testators, were found for apportioning the carrying charges. William Gould Brokaw, the brother, represents in amount twenty per cent of the life beneficiaries. He does not appear to be the special object of testatrix's bounty. Eighty per cent are content. He alone protests. As said in *Matter of Jackson* (*supra*, p. 291), it is the obvious intent of the testator alone which justifies the inference that " the first object of his solicitude " should have the advantage therein bestowed on him.

The order appealed from should be affirmed, with costs to all parties, payable out of the estate.

LEHMAN, J. (dissenting in part). If the only question involved in this case were whether there was an equitable

conversion either of the Palm Beach property or the Martin Hall property, I should agree entirely with the opinion of POUND, Ch. J. That is, in fact, the only question which was discussed in the original briefs, but as I indicated upon the argument, it seems to me quite clear that in regard to the Martin Hall property there is another question involved, to wit, the date at which that property became part of the residuary trust funds.

The Palm Beach property is not specifically mentioned in the will of the testatrix. It passes under the will to the executors and trustees as part of the residue of the estate, and under the terms of the will the executors and trustees were required to hold this residue in three separate trusts. Thus, even before the property was sold it became part of the residuary trust funds. The entire income of the trust funds, including the real property, was payable to the life tenants, but the expenses of maintaining the properties in the trust funds are deductible before the net income from the trust funds can be fixed. The fact that part of the trust funds consists of unproductive real property from which no income was derived does not change the rule, unless the testatrix commanded that the real property should promptly be converted into personalty or should be treated as personalty even before sale. In that contingency we would give effect to the intent of the testatrix. That intent could be carried out only by apportioning the net proceeds of the sale when made, after deducting all expenses of holding the property till the sale was made, between principal and income in such manner that there shall be credited to the income of the trust funds the return which the life tenants would have derived from the portion credited to capital, if the property had been converted into money at the time the trust funds were created. Here, we find neither imperative command for an immediate sale nor intent that the real property

before sale should be treated as if converted into personal property. Even though the testatrix directed that " all trusts created by this my will shall be established as of the date of my death and draw interest from such date," her executors might in the exercise of their discretion hold this real property as part of the trust funds if they chose to do so, and the will does not show an intent that the real property even before sale should be treated as personalty.

The question is different in regard to Martin Hall. The testatrix in her will, before the clauses disposing of the residue of the estate to the executors and trustees, has made a specific disposition of this parcel of real property:

" *Twenty-ninth.* * * * It is my will and I direct that my said husband have possession of ' Martin Hall,' its land and all the buildings thereon, for use and occupancy from the time of my decease down to the time when the sale of said property shall be carried out and effected as herein provided and said property is duly conveyed to the purchaser.

" I hereby direct my executors and trustees to sell at private sale or public auction within three years after my decease, for the best price and upon the best terms obtainable, my lands with the dwelling house and other buildings and improvements thereon erected, situated at or near Great Neck, Nassau County, New York, now known and designated as ' Martin Hall,' being one of the residences occupied by my husband, Preston P. Satterwhite, and myself since our marriage, and to place the proceeds thereof, whether cash or bond and mortgage, in the residuary fund of my estate."

Here there is no devise of the real property to be held by the executors and trustees for specified life tenants. There is only a direction to sell and then " to *place the proceeds* * * * in the residuary fund."

Unless there was an equitable conversion of Martin

Hall, then by the express terms of the will it never became part of the trust funds, created under the residuary clause of the will as of the date of death of the testatrix, for before that clause the testatrix had provided that her husband might occupy that real property until sale, and directed the executors to sell it and " to place the *proceeds* thereof  *  *  *  in the residuary fund of my estate." Until the actual sale of the property or its equitable conversion there could be no " proceeds."

In unmistakable terms the testatrix has provided that before the property can become part of the " residuary fund " it *must* be converted into personalty. If the directions of the testatrix are carried out, then the real property never becomes a part of the trust funds. If the executors and trustees fail to carry out these directions, then a court of equity will adjust the rights of the parties as if the executors and trustees had performed their duty.

It is conceded by all parties that the direction to sell Martin Hall is imperative, but the imperative direction to sell is, as POUND, Ch. J., has pointed out, qualified by provisions that the sale must be made within three years, and that until the time when the sale is made and carried out, the husband of the testatrix shall have possession of the property, then until the expiration of three years there could be no equitable conversion of the property. So long as the executors and trustees were not under a duty to sell, and the husband of the testatrix had a right of possession, the testatrix could not have intended that the life tenant should enjoy any income or profits from her property, and, therefore, the proceeds of the sale should not be apportioned between the life tenants and the remaindermen. They must, in accordance with the terms of the will, be added to the capital of the trust funds.

It does not follow that out of the income from the trust funds the expenses of maintaining and carrying the real property until sale should be paid. On the contrary,

the same reasoning which has brought us to the conclusion that until the expiration of three years there was no equitable conversion, leads, I think, to the conclusion that, until then, the property did not become part of the residuary trust fund, and the expenses of the property cannot be charged against the income. Perhaps if the husband, who under the terms of the will had a right of possession to the real property until sale, had been the sole life tenant of the entire trust fund, it might be argued that in spite of inept language the testatrix did intend that Martin Hall should immediately become part of the trust funds, and that the expenses should be paid out of the income of the trust funds until sale. Here, however, the husband is the life tenant of only one of the three residuary trusts. The objectant appellant is the life tenant of another fund. He could derive no profit or benefit from the real property, and there is nothing in the language of the will which permits an inference that even before sale a share in this real property was held in trust for him. Thus it seems to me quite clear that from the conclusion that there was no conversion of this real property until three years had passed, it must follow that until that time Martin Hall did not become part of the residuary trust funds. Any other construction would, it seems to me, do violence to the express language of the will and defeat the intent of the testatrix.

Since the testatrix provided that only the proceeds of the sale of Martin Hall should become part of the residuary trust funds, I cannot see any basis for holding that the income of these trust funds can be charged with the expense of maintaining and carrying that property before sale. Such expenses should be deducted from the amount received upon the sale before the amount of the " proceeds " of the sale can be determined and added to the " residuary funds." The Surrogate has determined that the " net proceeds " of the sale of

Martin Hall " after deducting therefrom all expenses of maintenance and other carrying charges accruing after May 1, 1930," should be apportioned between principal and income. He was correct in his holding that the apportionment of the " proceeds " as between income and principal should be made from the date of the equitable conversion of the real property. He erred in holding that the net proceeds to be so apportioned could be arrived at without deducting also the expenses and other carrying charges between the date of the death of the testatrix and May 1st, 1930, when through equitable conversion of the property the " proceeds " became part of the trust funds. Between those dates these expenses and charges were not a burden on the trust funds payable out of the income, but were deductible from the amount received on the sale before the net proceeds were added to the trust funds.

The order of the Appellate Division and decree of the Surrogate should be reversed to that extent, and the matter remitted to the Surrogate for further proceeding in accordance herewith, with costs to all parties, payable out of the estate.

KELLOGG, O'BRIEN and CROUCH, JJ., concur with POUND, Ch. J.; LEHMAN, J., dissents in part in opinion in which CRANE, J., concurs; HUBBS, J., not sitting.

Order affirmed, etc.