In the Matter of the Accounting of ALICE C. ROWLAND et al., as Executors of GEORGE B. ROWLAND, Deceased. ALICE C. ROWLAND et al., Individually and as Executors of CHARLES B. ROWLAND, Deceased, Appellants; CYRUS S. JULLIEN, as Special Guardian for ANN E. ROWLAND, an Infant, Respondent.

Argued January 5, 1937; decided January 19, 1937.

*Royd C. Lutz* for appellants. Testator intended that the Continental property should be sold when it became unproductive, thereby effecting an equitable conversion of same. (*Matter of Jackson,* 258 N. Y. 281; *Furniss* v. *Cruikshank,* 230 N. Y. 495; *Spencer* v. *Spencer,* 219 N. Y. 459; *Lawrence* v. *Littlefield,* 215 N. Y. 561; *Matter of Lott,* 148 Misc. Rep. 1; *Matter of Hopkins,* 133 Misc. Rep. 554; 226 App. Div. 180.) The testator intended that lot 37 should be sold and thereby effected an equitable conversion as to it. (*Matter of Jackson,* 258 N. Y. 281; *Furniss* v. *Cruikshank,* 230 N. Y. 495; *Spencer* v. *Spencer,* 219 N. Y. 459; *Lawrence* v. *Littlefield,* 215 N. Y. 561.) The taxes and other carrying charges on the Continental property and the other unproductive property were properly charged against principal. (*Matter of Satterwhite,* 262 N. Y. 339; *Matter of Jackson,* 258 N. Y. 281; *Furniss*

v. *Cruikshank*, 230 N. Y. 495; *Spencer* v. *Spencer*, 219 N. Y. 459; *Lawrence* v. *Littlefield*, 215 N. Y. 561; *Matter of Wainwright*, 157 Misc. Rep. 531; *Matter of Wardman*, 154 Misc. Rep. 255; *Matter of Schuster*, 150 Misc. Rep. 444; *Matter of Lott*, 148 Misc. Rep. 1; *Matter of Lichtenberg*, 114 Misc. Rep. 89; *Cram* v. *Cram*, 2 Redf. 244.) The surrogate erred in holding that, because the Continental property produced a net income at date of execution of will and at date of testator's death, the equitable conversion doctrine was not applicable. (*Lawrence* v. *Littlefield*, 215 N. Y. 561; *Matter of Schuster*, 150 Misc. Rep. 444; *Matter of Satterwhite*, 262 N. Y. 339; *Matter of Jackson*, 258 N. Y. 281; *Furniss* v. *Cruikshank*, 230 N. Y. 495; *Spencer* v. *Spencer*, 219 N. Y. 459; *Matter of Wardman*, 154 Misc. Rep. 255; *Matter of Martens*, 16 Misc. Rep. 245; *Matter of Pulitzer*, 139 Misc. Rep. 575; 237 App. Div. 808; *St. Johns* v. *Montgomery*, 265 Ill. 21; *Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137; *Toronto General Trusts Co.* v. *C., B. & Q. R. R. Co.*, 64 Hun, 1; 138 N. Y. 657.)

*Cyrus S. Jullien*, as special guardian for Ann E. Rowland, an infant, respondent. As between the life tenant and the remainderman the former is bound to pay the taxes and other ordinary operating expenses of real property forming the subject-matter of a trust. (*Matter of Albertson*, 113 N. Y. 434; *Woodward* v. *James*, 115 N. Y. 346; *Lawrence* v. *Littlefield*, 215 N. Y. 561; *Spencer* v. *Spencer*, 219 N. Y. 459; *Furniss* v. *Cruikshank*, 230 N. Y. 495; *Matter of Jackson*, 258 N. Y. 281; *Matter of Satterwhite*, 262 N. Y. 339; *Matter of Stevens*, 187 N. Y. 471.) The will contained no mandatory power of sale and there are no inferences to be drawn from the circumstances attending the execution thereof that the testator intended the apportionment of carrying charges of the real estate between income and principal or of proceeds of sales between life tenant and remainderman. (*Furniss* v. *Cruikshank*, 230 N. Y. 495; *Matter of Satter-*

*white,* 262 N. Y. 339; *Matter of Weil,* 151 Misc. Rep. 841; *Matter of McCafferty,* 142 Misc. Rep. 371; 236 App. Div. 678; *Matter of Frank,* 153 Misc. Rep. 688; *Matter of Bates,* 152 Misc. Rep. 627.)

HUBBS, J. Charles Bradley Rowland died November 1, 1926, leaving a last will and testament executed November 2, 1918. He owned real property in this State as tenant in common with his brother Thomas Fitch Rowland, Jr., one of the executors. All of the real property in which deceased had an interest at the date of his death, except three parcels, was under lease to the Continental Iron Works, pursuant to which lease the tenant was required to pay the taxes and all other expenses in connection with the upkeep of the property and an annual rental of $15,000. That lease continued in existence until November 14, 1927. It was then surrendered by a duly executed surrender of lease, the reason for such surrender being the dissolution of the tenant, the Continental Iron Works. The executors and Thomas Fitch Rowland, Jr., have endeavored to sell the property but have been unable so to do. From the time of the surrender of the lease down to the close of the accounting period herein, income to the extent of $15,834.35, representing one-half of the total rental, was received by the executors, but of that sum $7,817.50 was paid by the Continental Iron Works prior to its dissolution. During the accounting period, one-half of the total expenses on account of the real property amounted to $60,272.30, leaving a net operating loss to the estate on the property in question of $44,546.37. The Continental Iron Works was largely, if not wholly, a family concern in which testator and his executors retained an interest until its dissolution. The interest of Thomas Fitch Rowland, Jr., also continued until its dissolution.

Of the other parcels of real property in which deceased had a one-half interest at the date of his death, two were productive and are not involved on this appeal. The

remaining parcel, appraised at $1,250, was unproductive at the date of the decedent's death and continued unproductive to the date of its sale, which occurred on June 27, 1930, in conjunction with three of the lots included in the Continental Iron Works property. The sale price of the four lots sold was $29,000, and the estate's share of the net proceeds amounted to $13,556.25. The Continental Iron Works property as a whole had a total appraised value of $656,936.25, testator's share having an appraised value of $328,468.12.

The executors in their account requested instructions as to whether the taxes and expenses in connection with the upkeep of the Continental Iron Works property might properly be charged to principal, having paid them out of principal; as to whether the proceeds from the sale of the property already sold should be apportioned between principal and income; and, if it be held that such proceeds should be apportioned between principal and income, as to the method of such apportionment. The Surrogate decreed that the taxes and operating expenses totaling $44,546.37 should have been charged against income of the trust created under paragraph " Ninth " of the will hereinafter set forth and since they had been paid out of the principal of the estate, surcharged the executors with the amount thereof. He also decreed that the net proceeds of the property sold should not be apportioned between principal and income, but that all of same remains principal. Such decree has been unanimously affirmed by the Appellate Division.

The first question to be considered is whether taxes and other expenses of real estate, held by the executors in trust under the will, which became unproductive subsequent to the death of the testator, should be paid out of principal, subject to apportionment between principal and income upon a sale of the property, or should be charged solely to income. The second question is as to whether the net proceeds of the sale of a portion of the real estate

should be apportioned and if so in what manner. The pertinent paragraphs of the will are the following:

" *Ninth.* The rest, residue and remainder of my estate, real and personal, I devise and bequeath to my Executors hereinafter named, the survivors or survivor of them in trust, nevertheless, to receive the income and profit thereof and apply the same to the use of my wife during her life. Upon her death said residue shall vest in my descendants then living, *per stirpes* and not *per capita*, but if on the happening of that event there be no descendants of mine living, it shall vest in my heirs-at-law, as determined by the Law of the State of New York, as it is at the date of the execution of this Will.

" If all of the descendants of my said wife and self shall predecease her, me surviving, said residue shall on the death of the last descendant so surviving, vest in her absolutely and forever.

" *Tenth.* It is my desire that the portion of my estate represented by my interest in The Continental Iron Works, and the joint interest I have with my brother, Thomas Fitch Rowland, Jr., in the real estate devised to us by our honored father, Thomas Fitch Rowland, shall be handled in conjunction with the interest of my said brother in such properties, if practicable, to the end that each of us may obtain the same benefits from their manipulation."

" *Thirteenth.* I nominate and appoint my wife, Alice Cary Rowland, Executrix, and my brother, Thomas Fitch Rowland, Jr., and my cousin, George Attwater Tibbals, Executors of this my Will and direct that no bond be required from them as such or as Trustees. I authorize and empower them as such and as Trustees to retain for investment or for specific distribution any securities of which I may die possessed, with power to sell the same and reinvest the proceeds and to sell my real estate at public or private sale, and to lease or mortgage the same."

It is a general rule that as between the life tenant and the remainderman, the former is bound to pay ordinary

expenses of maintenance of the property forming the subject-matter of the trust. (*Matter of Albertson*, 113 N. Y. 434; *Matter of Satterwhite*, 262 N. Y. 339.)

When the character of the trust property, the circumstances surrounding the execution of the will and the relationship of the testator to the beneficiary are such that intent to that effect on the part of testator may be presumed, a discretionary power of sale will be deemed in certain circumstances a mandatory power for the purpose of effecting an equitable conversion. The learned Surrogate, because the bulk of the property here in question was substantially productive at the time of the execution of the will and so continued until subsequent to the death of the testator, has taken the view that the facts contradict an inference of intent on the part of the testator for equitable conversion; that the existence of such an intent is necessary and that a decree that, in the circumstances, the power of sale herein should be deemed mandatory would amount to a re-writing of the will and attribute to the testator an intent not existent when the will was executed.

A consideration of the cases where a discretionary power of sale has been held to become an imperative power of sale as to unproductive real estate demonstrates quite clearly that no definite principle can be stated applicable to all cases because of the varying nature of testamentary provisions and, further, that the relationship of the beneficiary to the testator and the nature of the interest of the residuary legatee have largely influenced the courts in the application of the rule as laid down in particular cases.

In *Lawrence* v. *Littlefield* (215 N. Y. 561) a niece of the testatrix, whom she had treated as a daughter, was the life beneficiary of one-quarter of the residuary estate. The testatrix gave her executors power and authority to sell, as in their judgment they should deem proper, real property which was unproductive at the death of the testatrix. This court determined, in an action for con-

struction of the will, that the power of sale was imperative as to all the property of the testatrix except that specifically devised; that there was an equitable conversion as of the time of her death, and that the niece was entitled out of the proceeds of the sale to an apportionment.

The next case was *Spencer* v. *Spencer* (219 N. Y. 459, 467). There real estate unproductive at the death of the testator constituted the corpus of a trust for the benefit of the widow. The carrying charges consumed all of the income derived from the balance of the residuary estate. The will granted discretionary power of sale to the trustees. This court decided because of the unproductive character of the real estate, the carrying charges of which would consume all of the income from the balance of the trust estate, and the fact that the widow, who was the first object of the testator's bounty, would be deprived of all benefit under the will, and in view of certain inferences to be drawn from the wording of the will, that it was within the testator's intent that the taxes and carrying charges should be paid from principal. The court said, " to give his widow the income from the unproductive farm would be somewhat of a mockery."

In *Furniss* v. *Cruikshank* (230 N. Y. 495, 500) trusts were created for children of the testator. The funds set up for one of his daughters included unoccupied and unproductive real estate which was held for many years and finally sold at a greatly enhanced value. The will gave the trustees a discretionary power of sale. The court restated the rule that the interpretation of a will and the inferred intent of the testator must be gathered from the language used, the circumstances and conditions surrounding the execution of the will, as well as the relationship of the testator to the object of his bounty. The conclusion reached was that the " testator here designed an imperative power of sale with discretion only as to the time of its exercise."

In *Matter of Jackson* (258 N. Y. 281) unproductive real estate was included in a trust created by a testator

for the benefit of his wife. The will authorized the trustee in its discretion to sell at any time any of the unproductive real estate. The power to sell was held to be imperative, leaving the time of sale only to the discretion of the trustee. The court decided that the widow was entitled to an apportionment of the proceeds of the sale of the unproductive property.

It will be noted that in each of the foregoing cases, the real property involved was unproductive at the date of the death of the testator. In *Matter of Satterwhite* (262 N. Y. 339) and *Matter of Chapal* (269 N. Y. 464) the same principle was applied.

That the tendency of legislation is toward exempting the beneficiary of a trust from liability for carrying charges on unproductive property and toward apportionment between principal and income of the net proceeds of the sale of such property is indicated by section 11 of the Uniform Principal and Income Act, Uniform Laws Annotated (Vol. 9, Supplement, p. 171), approved by the National Conference of Commissioners on Uniform State Laws in 1931, and already in force in Oregon, Virginia and North Carolina. That such is proper practice in the administration of trusts is expressed in the Restatement of the Law of Trusts, American Law Institute (Vol. 1, §§ 240 and 241). Yale Law Journal (Vol. XL, p. 275) contains a note which makes a strong argument for the adoption of a general rule disregarding intent and specifying a positive duty on the part of the trustee to so act as to save the beneficiary from loss by a prompt sale of the property and, in the meantime, exempting the beneficiary from liability for carrying charges. We have not gone to that extent in this State.

The principle that a discretionary power of sale becomes an imperative power of sale and effects an equitable conversion in favor of the beneficiary of a trust who is a special object of the testator's bounty as respects property which becomes unproductive subsequent to the death of the testator, is not without authority to sustain it.

In *Matter of Jackson* (*supra*, p. 291) it was said that the rule here relied on by the courts below " thwarted the testator's probable purpose by loading carrying charges of unproductive real property upon the life tenant although such tenant was obviously the first object of his solicitude so long as she lived." Also that " The distinction between this case and cases where there is no imperative power of sale or equitable conversion; where the testator directs the trustees to sell only in their discretion and where it is, therefore, said that the only inference is that testator intended to benefit the principal of his estate * * * may not ultimately prevail."

The learned Surrogate has in effect held that an intent to have an apportionment will only be imputed to the testator where the testator knew that the inclusion of the property in question would wholly or materially destroy the value of the gift.

It seems to us that it would be at least as reasonable to assume an intent that the power should be imperative as to property known to be productive but which later becomes unproductive. We think under the facts of this case the existence of an intent that the power of sale was to become imperative upon failure of productivity with likelihood of continuance of that status, may be imputed to the testator. The life tenant was primarily the object of the testator's bounty. While he knew that the real property was productive he also knew that its productivity depended upon the continued existence and prosperity of the Continental Iron Works, a business in which he was financially interested and the management of which, through stock ownership, in part was in the hands of the executors and in part in the hands of his brother, who was one of the executors. It is not to be presumed that if he had foreseen the dissolution of the corporation and the surrender of the lease, with a resultant substantial loss of income to his wife, he would not have given an imperative power of sale which would result in saving so much

as possible of the income to his wife or would not have provided that if the property be held, the carrying charges should be paid out of principal pending a sale of the property. We hold, therefore, in the circumstances of this case under the provisions of the will, that an equitable conversion occurred upon the surrender of the lease and that the carrying charges on the Continental Iron Works property pending a sale are properly to be charged against principal and thereafter upon sale apportioned. In so far as the property sold is concerned, there should be an apportionment. Since the sale included a part of the iron works property which as a whole earned some income but was subject to large expense and also another lot wholly unproductive but subject to expense separately accounted for, determination of the net proceeds as to each portion must first be arrived at. The apportionment should be made according to the formula prescribed in section 241 of the Restatement of the Law of Trusts.

The intent of this decision is not to lay down a general rule, applicable to all trusts involving real property which becomes unproductive during administration of the trust. The decision is based on the facts of the particular case.

The orders appealed from should be reversed and the proceeding remitted to the Surrogate's Court for a decree in accordance with this opinion, with costs to all parties payable out of the estate.

CRANE, Ch., J., O'BRIEN, LOUGHRAN and RIPPEY, JJ., concur; LEHMAN and FINCH, JJ., taking no part.

Ordered accordingly.