In the Matter of the Estate of JOSEPH M. ANDREINI, Deceased.

Surrogate's Court, New York County, November 24, 1937.

*Mitchell, Taylor, Capron & Marsh,* trustee.

*I. J. Joseph,* special guardian.

*Samuel Saline,* for Kenneth M. Andreini, respondent.

DELEHANTY, S. Deceased died on June 25, 1932. His next of kin were his two sons, Norman G. and Kenneth M. Andreini. By paragraph eleventh of his will deceased established trusts for the benefit of his sons, each trust being constituted of one-half of his residuary estate. The trust for each son directed the payment of the income to him during his life with remainder on his death to his descendants, *per stirpes.* If at the death of either son he left no descendants surviving and the trust for his brother had not ter-

minated, the principal of the trust for the son so dying was to be added to the principal of the trust for his brother, but if that trust had terminated, then the trustees were directed to pay the principal to the then living descendants of the brother *per stirpes,* and in default of descendants of the brother to pay the principal in equal parts to three sisters of deceased or their descendants. A further provision directed that if the sisters and their descendants were then all dead the principal was to be distributed as intestate property. The son Norman died on May 12, 1936, intestate and without descendants. His brother Kenneth has been appointed administrator of his estate.

The executor, as such, filed an account of its proceedings to September 14, 1933. That account was settled by decree dated January 10, 1934. The personal estate of deceased was valued in that account at $335,639.57. The only real estate reported was premises 29 West Seventy-fifth street, New York city, appraised at $30,000. In that accounting expenditures for taxes, watchman's services and insurance in connection with the Seventy-fifth street house were reported and were charged against income. No objection to that course was made by any interested party. The decree transferred the realty to the trustee.

The trustee has now filed a further account of its proceedings from the date of the last accounting to and including March 2, 1937. In Schedule C II of this account the trustee takes credit for payments from income of $4,879.80 expended in the maintenance of the premises 29 West Seventy-fifth street, New York city. The son Kenneth, individually and as administrator of his brother's estate, raises issues respecting the propriety of the payment by the trustee from income for the maintenance charges of the property and respecting the apportionment of the proceeds of the sale of the real property. By answer to the petition he contends that deceased intended that the carrying charges of the real estate should be paid from the principal of the trusts pending its sale, and that the proceeds of the sale should be apportioned between principal and income. By its reply, served pursuant to stipulation, the trustee asserts in substance that there was no market for the property in its then condition, and that the cost of alteration so as to enable its letting would exceed a reasonable cost. The reply admits the allegation in the answer that some days after the close of the period accounted for the premises were actually sold by the trustee and the consideration therefor received by the trustee. The parties have stipulated that certain affidavits may be considered as proof of the facts recited therein and also that the allegations in the reply of the trustee shall be deemed established.

There is no controversy over the state of the market for the property. It is admitted that there would have been required a substantial capital outlay to put the premises in condition for letting. In effect, no challenge is made of the good faith of the executor and trustee in continuing to hold the property.

The premises were purchased by deceased as a private residence on January 23, 1895. He resided there until his death on June 25, 1932. He was eighty-two years old at the time of his death. He was the sole support of the two sons, who never had any gainful occupation. In 1931 the land and building were assessed at $56,000, the building being assessed at $11,000 and the land at $45,000. There was a gradual reduction in the assessment for each year until 1937, when the property was assessed at $39,500. In the latter year the building was assessed at $8,000 and the land at $31,500. The realty value was about one-twelfth of the original total value of the estate. The income reported by the trustee for the period now accounted for exceeds $45,000. The challenged payments allocated to income are about $4,900.

Paragraph tenth of the will provides: " I authorize and direct my Executor to sell the dwelling house and lot known as Number 29 West 75th Street, in the Borough of Manhattan, City, County and State of New York, if I shall own the same at the time of my death, as soon after my death as my Executor may be able to obtain a reasonable price therefor, the determination of my Executor as to what shall constitute a reasonable price to be binding and conclusive upon all persons interested in my estate or in any trust created hereunder, and the proceeds of such sale shall fall into and constitute a part of my residuary estate and follow the disposition thereof as hereinafter in clause eleventh of this my Will and in the manner provided, in all respects both as to principal and as to income. If in the judgment of my Executor it shall seem more advantageous to postpone the sale of the said premises, I hereby authorize and empower my Executor to manage the said property, to lease the same, whether for a term of five years or less or more than five years, without application to any court, and to collect the rents therefrom and to pay out of said rents all taxes, assessments and other expenses properly chargeable against income, and the balance of said rents shall constitute income of my residuary estate and shall be disposed of as such in accordance with the provisions of clause eleventh of this will."

What deceased intended must be determined from the provisions of the will and the circumstances surrounding him at its date. If he intended an equitable conversion of this real property to be effective as of his death, then the carrying charges from the time of

conversion are payable from the principal of the estate or trust (*Spencer* v. *Spencer*, 219 N. Y. 459; *Furniss* v. *Cruikshank*, 230 id. 495; *Matter of Satterwhite*, 262 id. 339; *Matter of Rowland*, 273 id. 100), and it must be presumed that the life tenant was entitled to income from the time the conversion was directed to take effect or a reasonable time thereafter up to the time of sale. If such conversion was intended, the proceeds of sale must be apportioned. (*Matter of Jackson*, 258 N. Y. 281; *Furniss* v. *Cruikshank, supra; Matter of Satterwhite, supra.*) It may be argued that paragraph tenth of the will works an equitable conversion since the trustee is *directed* to sell the property. If that be conceded, decision is required as to the *time* when the equitable conversion is to take effect. There is no established rule as to that time. In *Furniss* v. *Cruikshank (supra)* it was held that the conversion became effective *one year* after the trusts were constituted. In *Matter of Satterwhite (supra)* the conversion was held effective at the end of *three* years, that being the time limit fixed by deceased for a sale of the property. In *Matter of Jackson (supra)* and in *Lawrence* v. *Littlefield* (215 N. Y. 561) the conversion was held effective as of the *date of death*. If any rule is stated in *Matter of Rowland (supra)* it is that the *time* at which a conversion is worked depends upon the facts of the particular case. There the conversion was dated as of the surrender of a lease some years after the death of deceased. The time of conversion was not related to the time of death, however, but rather to the becoming unproductive of the property. The body of the opinion seems to presage the formulating of a simple rule of apportionment effective as of the date when property during administration becomes unproductive, but the final paragraph of the opinion proper negatives any such intention. The court there states expressly that the decision does not lay down any general rule and limits its application to the particular facts of the case. The trial judge is still left to seek in the infinite variety of testamentary language and of factual background for the elusive and sometimes unascertainable intention of the particular testator whose will is in question.

Taking up that search, it should first be noted that the property cannot be classed as unproductive in the hands of the testator. It furnished him shelter, housing for his family, housing for his goods and all the intangible benefits connected with enjoyment of a fixed abode. The objectant lived there with his father till the latter's death. Whether he could have continued to live there and whether the other income beneficiary might have lived there also does not appear from this record. The proof shows that the house actually served the needs of deceased for a residence, and it may be

assumed that it could have served his sons had they chosen to use it. This residence represented the only realty in the estate. Its value was only $30,000 in an estate totaling over $360,000. The carrying charges actually paid since the death of deceased, as shown on both accountings, aggregate about $5,700. The estate income since death, as shown on both accountings, aggregates about $60,000. It follows that in no sense can the realty be deemed to constitute so large a share of deceased's property as to invoke any presumption that he considered a sale necessary in order to provide for his sons. A gross income of about $10,000 per year since death is left after deducting the carrying charges.

The direction in the will is to sell the property as soon after the testator's death as his executor " may be able to obtain a reasonable price therefor." That is not a direction to convert as of death. The testator makes it clear that the time of sale is absolutely discretionary by further stating that the determination of his executor " as to what shall constitute a reasonable price " is " to be binding and conclusive upon all persons interested " in the estate. This is the equivalent of a statement by the deceased that, in the absence of bad faith on the part of his executor, the latter's actual sale of the property is decisive as to date of conversion. If more were needed to indicate the testator's intention *not* to work an immediate conversion such proof is found elsewhere in the quoted paragraph. The testator in broad terms granted to his executor the power to lease the premises and expressly directed that only the *net* income was to be income of the residuary estate. This power to lease is the antithesis of a direction to convert. While the testator no doubt hoped that a lease would be made, and so spoke of charging taxes and other expenses to the gross rents, there is no basis for assuming that he contemplated no interval when carrying charges would accrue with no rent to offset them. His authority to his executor to postpone the sale if an adequate price could not be had connotes authority to pay carrying charges out of income during the period of delay.

Because the broad powers granted to his executor refutes any claim that the testator intended a conversion earlier ·than that actually effected by a sale; because the income beneficiaries are adult sons capable presumably of their own support and hence not utterly dependent on deceased; because the realty was not unproductive in the hands of the testator; because the realty constituted only a small fraction of the total estate; because the carrying charges thereon constituted only a small fraction of the gross income; because the allocation of such carrying charges to income were heretofore acceded to by the objectants and were confirmed

by decree of this court; and because no imputed, as distinguished from an actual, intent to convert can be found in the circumstances surrounding the testator and his estate, the court holds that the objections to the charges to income account are without support, and such objections are dismissed.

Submit, on notice, decree settling the account accordingly.