In the Matter of the Estate of Robert G. Reese, Deceased.

Surrogate's Court, New York County, October 26, 1939.

*Milbank, Tweed & Hope*, for the Chase National Bank, petitioner.

*Reid & Priest* [*E. Nobles Lowe* and *Harry A. Poth, Jr.*, of counsel], for Eugene P. Summerson, petitioner.

*Egbert W. Doughty*, for Louise del'Aigle Reese, life beneficiary.

*Hays, St. John, Abramson & Schulman*, for Louis L. Allen and Louis del'Aigle Munds, as executors, etc., of Theus Munds, deceased.

*White & Case* [*Hugh L. Thomson* of counsel], for the New York Eye and Ear Infirmary.

*Herman Goldman*, for the Empire Trust Company, as general guardian, etc., of Harmon Smith, Jr., and as trustee under the last will and testament of Harmon Smith.

*Robert H. Jones* and *Louise Tull Baker*, appearing in person.

Foley, S. The surrogate holds that under the terms of the will and under the rules laid down in *Matter of Rowland* (273 N. Y. 100)

the widow, as life tenant of the trust, is entitled to be reimbursed for the carrying charges of the real property No. 50 West Fifty-second street, borough of Manhattan, New York city, during the period in which it was unproductive.

The facts here are very similar to those in the *Rowland* case. There, as here, the widow was the income beneficiary and the special object of the bounty of the testator. In that case, as in the pending proceeding, there was a discretionary power of sale which forms the basis of an imputation of intent on the part of the testator to convert it into a mandatory power when unproductivity occurred. The solicitude of the testator for his wife in the present will is strongly emphasized by its language. The remaindermen constitute a class of collateral relatives, employees, other persons and a charitable institution. Plainly they were not regarded by the testator as special objects of bounty and the preference of his wife in contrast with the other beneficiaries in the will stands out. The widow has been compelled to pay out of her income for taxes, interest and other carrying charges the sum of about $13,000. That sum is approximately twenty per cent of the gross income of the trust during the period in question. It is not to be presumed that if her husband had foreseen the change in the character of the neighborhood and the very small return in some years and the absence of any rent derived in others, " with a resultant substantial loss of income to his wife, he would not have given an imperative power of sale which would result in saving so much as possible of the income to his wife or would not have provided that if the property be held, the carrying charges should be paid out of principal pending a sale of the property." (HUBBS, J., in *Matter of Rowland, supra.*)

The facts and the terms of the will in *Matter of Andreini* (165 Misc. 297), where Mr. Surrogate DELEHANTY found that there was no indication of intent to command an equitable conversion and held that the carrying charges should be borne by the life tenant, are very different from those involved in the present proceeding. In the *Andreini* case the income beneficiaries were adult sons not dependent on the decedent. Their situation, therefore, was like that of the life tenant in the secondary phase of *Matter of Satterwhite* (262 N. Y. 339), where a brother of the decedent was the life beneficiary of a trust which included property located at Palm Beach, Fla. Because, in part, of the fact that he was not a special object of bounty, the court refused to apply the rule of equitable conversion and apportionment. In the *Andreini* case, as in the pending proceeding, the unproductive real property was a relatively unimportant asset as compared with the magnitude of the other

property within the trust. That element, however, alone is not controlling. As has been heretofore indicated, the carrying charges of the unproductive real property constituted a substantial charge against the income of the trust. In that regard the facts are similar to those in *Matter of Rowland (supra)*.

The surrogate, therefore, holds that the widow, as life tenant, must be reimbursed for the amounts deducted for taxes, interest and other expenditures. The total of these deductions exceeded the net proceeds of the sale of the property, which were $9,990. The latter amount constitutes the maximum for which reimbursement may be allowed. Where real property, subject to the rule of equitable conversion and apportionment, is sold, there must be paid first out of the proceeds the advances for carrying charges to principal if principal has paid them, or to the life tenant, if he or she has paid them. In this regard counsel for the trustees is in error as to the method of allocation of the proceeds under section 241 of the Restatement of the Law of Trusts which was approved in *Matter of Rowland (supra)*. (*Matter of Clarke*, 166 Misc. 807.) Since the entire proceeds of the sale have been exhausted by the payment of carrying charges, the further question of apportionment between the life tenant and remaindermen is academic in the present case.

Submit decree on notice construing the will and settling the account accordingly.