In the Matter of the Accounting of NATIONAL CITY BANK OF NEW YORK et al., as Executors of H. HARDCASTLE PENNOCK, Deceased.

CONSTANCE L. PENNOCK et al., Infants, Appellants; CAROL H. PENNOCK et al., Respondents.

Argued January 15, 1941; decided May 29, 1941.

*Alexander S. Andrews*, special guardian, for appellants.

*Richard Steel* for Carol H. Pennock, respondent.

*David M. Potts* and *Otis T. Bradley* for National City Bank of New York, as executor, respondent.

CONWAY, J.   The testator executed a will by which he bequeathed fifty dollars to each of his two children, all his personal and household effects to his wife and the residue of his estate to his trustee in trust " to hold, manage, invest and reinvest " it and to pay the net income to his wife for life, then, after division into two parts, to pay the income to each of his two children for life with remainder

over to their issue *per stirpes* and in default of such issue to a relative.

The testator was a life insurance agent who was entitled to commissions on renewal premiums over periods of years, the longest of which could be fifteen, upon policies written by him in a number of companies. At the time of his death the total of these commissions could have reached the sum of approximately $160,000. There would, of course, be no renewal premium paid, and thus no commission, in the event of the death of a policyholder or the lapse or surrender of his policy.

The fifth paragraph of the will is as follows:

"*Fifth.* I authorize my executors and trustee to retain as investments for the trusts hereby created any of the securities or property in which my estate may be invested at the time of my death, until in their discretion they shall deem it advisable to dispose of them, hereby relieving them from all responsibility and liability for loss in so doing. Upon any sale of such securities, I direct my executors or trustee to invest the proceeds in such securities as are legal for trust funds. I direct that all stock dividends received by my trustee be held as part of the corpus of the trust estate."

The testator had set up a *living trust* with the same trustee and beneficiaries but with the income payable to himself during his life and upon his death to his wife during her life under certain conditions not here material. The trust deed was amended in 1929 by the addition of the following provision: "After the death of settlor so long as settlor's said wife shall * * * be entitled to receive the income from the trust fund hereunder, the trustee *shall* apply to her each year out of the principal of the trust fund so much thereof as with the income applied to her hereunder and with the income and/or principal applied to her under any other trust, whether by agreement or by will wherein the National City Bank of New York or the Farmers Loan & Trust Company or the successor of either of them shall be acting as trustee, will aggregate each year the sum of $15,000. The direction herein contained shall be in addition to any other direction or authority in this agreement contained for the application of principal to settlor's said wife."

The questions presented are as to the nature of the assets constituting the rights to the commissions from the various companies and whether there should be apportionment of capital and income among the successive life tenants and remaindermen upon the sale of those assets or their realization.

The learned Surrogate after a review of the authorities reached the conclusion that these choses in action were not wasting but capital assets. This we think was correct.

" Wasting property includes such property as leasehold interests; royalties; patent rights; interests in things the substance of which is consumed, such as mines, oil and gas wells, quarries and timber lands; interests in things which are consumed in the using or are worn out by use, such as machinery and farm implements." (2 Scott on The Law of Trusts, § 239, pp. 1332, 1333.)

Wasting assets generally are such as throw off what would be true income except for the wastage. In such cases there is an apportionment from income to capital for the protection of the *remainderman*. The rights to the commissions in renewal premiums are not of this nature. They are rights to receive installments of remuneration for work fully performed during the lifetime of 'the testator, in definite and certain amounts, upon payment of the renewal premiums, which installments, however, may never be received because of the occurrence of events over which neither the successive life tenants nor remaindermen have any control.

Of such a commission it has been said: " He had earned his pay, and had received a part of it; to the rest, he then acquired a right, such as it was, but no determination could then be made how much the rest would be, and in no event could he receive it except in annual installments. Although the right had value, it lacked an essential element; no renewal premium might ever be paid, and in that event he would receive nothing more; or renewals might be paid only in part, and then he would be entitled to commission on that part only. The insured might die before a given

renewal fell due, or he might allow his policy to lapse, and in either event the right of the agent to future commissions perished. The right, therefore, was contingent; his contracts so provided, for they declared that commission should accrue only as premiums should be paid in cash, and certainly *until such payment should be made he had no collectible claim against the society.* He had a property right that had value, but contained also an element of risk, and unless he turned it into money it remained contingent. The act taxes money, or its equivalent, or its representative, and a contingent right such as this is not ' income ' in the sense used by the act." (*Woods* v. *Lewellyn,* 252 Fed. Rep. 106, 108. See, also, *Parker* v. *Routzahn,* 56 Fed. Rep. [2d] 730.)

Upon receipt of all the payments which have been or will be made, the assets will not have wasted but will have been realized. These are clearly capital assets which throw off no income. As each renewal premium is paid there is created a debt by the particular insurance company to the estate. The receipts of money by the estate are the payment of those debts. Thus the doctrine of *Howe* v. *Earl of Dartmouth* (7 Ves. Jr. 137) and the apportionment from income to capital thereunder is not applicable here. The reason is that there is no income from these choses in action. The payments are of principal.

This conclusion does not dispose of the question of apportionment, however, of those payments between principal and income. Apportionment is of very great importance to the life tenant since it is possible, under the testator's agreement with the insurance companies, that some of the payments of principal may not fall into possession for nearly fifteen years. The record does not disclose with any exactitude for how long a period the payments will or may continue and, of course, there will be no sums to invest to provide income for the life tenant except as payments are received by the trustee.

Considering for a moment the " fifth " paragraph of the will, quoted *supra,* there was no permission granted therein

to retain the rights to the commissions as "investments." The contracts for the payment of those commissions to the testator were clearly neither securities nor property in which testator's estate was "invested" at the time of his death. An investment is generally defined as "the conversion of money or circulating capital into some species of property from which an income or profit is expected to be derived in the ordinary course of trade or business." (33 C. J. 808.) In this instance, in addition, the meaning of the term is also made manifest from its use in the portion of the will of which quotation has been made, *supra*.

It thus may not be urged that there can be no apportionment here because there was *permissive retention* of the assets and that, therefore, a rule for apportionment as to personalty is being declared which differs from that relating to realty as laid down in *Lawrence* v. *Littlefield* (215 N. Y. 561, 567–569); *Furniss* v. *Cruikshank* (230 N. Y. 495, 500, 501) and *Matter of Rowland* (273 N. Y. 100, 108, 109).

We are not now concerned with the apportionment allowed below, on the theory of wasting assets, where there was permitted an apportionment *at once*, from *capital* to *income* and an invasion of capital for the benefit of the life tenant over what might be a term of fifteen years, with all the risk of failure of the assets to fall into possession thrown upon the succeeding or secondary life beneficiaries and remaindermen. What we have here are not wasting assets but unproductive and partially unproductive assets. In the case of unproductive assets there is an apportionment from capital to income upon sale or realization in order to protect the *life tenant*. The authorities from *Lawrenc* v. *Littlefield* (215 N. Y. 561) to *Matter of Rowland* (273 N. Y. 100) have laid down the rules applicable to the apportionment of the proceeds of the sale of unproductive realty and have also pointed out the occasions when the apportionment will be decreed. The same rules have properly been held applicable to unproductive tangible personalty of peculiar and distinctive character. (*Matter of Clarke*, 166 Misc.

Rep. 807.) We see no reason for any distinction between a sale of chattels and realization upon choses in action when of the peculiar and distinctive character of the commissions here.

It is the intention of the testator which controls. The question here is whether under this will creating a trust of unproductive and partially unproductive personalty assets with income payable to successive life beneficiaries with remainder over, with no permission given to the executors or trustee to retain the rights to the commissions on the renewal premiums and yet with no proof of a market for the sale of those rights, we shall say that the testator intended that the moneys which fell into possession on the realization of those rights shall be apportioned between income payments to the successive life beneficiaries and principal payments to the remaindermen? Or, on the contrary, shall we say that the testator intended that the moneys from the rights as realized should be treated as principal with income payable to the life beneficiary or beneficiaries only from the times of their investment, even though the testator knew that some of those moneys might not fall into possession for many years?

The interpretation of a will and the inferred intent of the testator " must be gathered from the language used, the circumstances and conditions surrounding the execution of the will, as well as the relationship of the testator to the object of his bounty." (*Matter of Rowland, supra*, p. 107; *Furniss* v. *Cruikshank, supra*.) To these should be added a consideration of the nature of the trust property and its extent in relation to the other assets of the estate.

The desire of the testator that his wife have prompt and substantial income upon his death is evidenced by his change in the living trust made on June 26, 1929, and by the trust established by his will executed on March 3, 1933, some two and one-half years before his death. It must be assumed that he knew all that could be known about his contracts for commissions on renewal premiums, for he was a life insurance agent. It must also be assumed that he knew the extent of his estate. The value of the

securities in the living trust at the time of his death was approximately $73,000 which was greater than his net estate passing by his will. An invasion of the capital of the living trust to the extent of $15,000 per year would inevitably soon destroy it entirely if there were no income from the trust created by will except from the investment of the payments as and when received from the insurance companies. It is clear that such was not the testator's intent. Moreover, the decree appealed from, which is dated December 18, 1939, discloses that there have been paid debts and administration expenses totalling $49,894.61 and it is alleged that there is the sum of $4,000 still to be paid. It is conceded by the respondent widow, individually and as executrix, that the executors liquidated *all* the other assets of the estate and sold them in order to satisfy estate obligations and that they were insufficient for that purpose. Thus we find that the rights of testator to commissions are not only the sole assets of the estate but that the moneys realized from them must be invaded to satisfy debts and administration expenses. If it may not be said that there shall be apportionment on realization of those rights to commissions, there will shortly be neither living trust nor substantial income from the trust established by will. Finally, the successive life tenants are the widow and the two children, who are equally preferred objects of testator's bounty. The intention of the testator that there be apportionment on realization of these unproductive and partially unproductive assets is manifest.

In *Lawrence* v. *Littlefield* (215 N. Y. 561, *supra*), Judge HISCOCK, later Chief Judge, referred with approval to the case of *Wilkinson* v. *Duncan* (23 Beav. [1857] 469) and quoted from it. There the asset consisted of a " reversion of a considerable sum of money." In other words, the asset was a chose in action, as here, and not a tangible chattel, as in *Matter of Clarke* (*supra*). The quotation referred to is peculiarly applicable and is as follows: " The trustees delayed to sell the reversion until it had fallen into possession, because they were of opinion, that by so doing, they would, in

the end, produce a larger amount to the estate of the testator. They acted properly in so doing, but they ought not thereby to injure one of the legatees of that trust fund for the benefit of others, and it is to be presumed that they in no way intended to do so. The tenant for life has received nothing for interest down to the present time; but if the reversion had been sold he would then have received the interest on the amount of the purchase money; and if the period when the reversion fell in could have been foreseen, and the reversion could have been sold at a fair price, it ought, with the accumulated interest upon it, to have realized the full amount of the fund as it stands at present. I am of opinion that the tenant for life is entitled to have paid to him, in respect of interest, out of the capital of the fund now realized, the amount which he would have so received " (p. 572).

*Wilkinson* v. *Duncan* (*supra*) was followed by *Yates* v. *Yates* (28 Beav. [1860] 637), also referred to and quoted from by Judge HISCOCK (p. 573), and by *Beavan* v. *Beavan* (24 Ch. Div. 649n), *Matter of Earl of Chesterfield's Trusts* (24 Ch. Div. 643) and *Matter of Hollebone* (2 Ch. Div. [1919] 93).

In the last-mentioned case the testator joined in the sale of the business of a partnership, of which he was a member, for a purchase price to be paid in ten half-yearly installments, each to be a percentage of the total net commissions which the purchasers should earn during such half-yearly periods from certain clients. In the event that an installment was not paid on its due date, interest was to be added until payment made. He bequeathed his residuary estate to trustees upon trust for conversion, with power to postpone, to pay the income to his wife for life with remainders over. As is evident, the case is very close in its facts to the instant one. The court there said: " It comes, therefore, to this, that part of the outstanding personal estate of the testator is represented by the right to receive these installments of purchase money of wholly uncertain amounts and in the meantime producing no income. The widow is not bound to join in exercising the power to postpone the

conversion of the asset, but it is obvious that the amount which could be realized by its immediate conversion is of a very uncertain and speculative character. In these circumstances, it is for the benefit of all parties interested in the corpus of the estate that conversion should be postponed and that the agreement for sale should be worked out, but this result ought not to be allowed to prejudice the tenant for life; * * * " (pp. 96, 97).

In the instant case there was a valuation placed upon the right of the testator to the commissions from the various companies at the sum of approximately $87,000 as of the date of his death. There was testimony that commission accounts such as these are purchased, although not by insurance companies, but it was not established that there was a market for such sales and no sale was made.

This leads to the conclusion that upon payment of each commission to the trustee there shall be apportionment therefrom of capital and income, for the successive life tenants, in accordance with the formula prescribed in section 241 of the Restatement of the Law of Trusts (*Matter of Rowland*, 273 N. Y. 100, 110), at the average rate earned upon legal investments from the date of testator's death to the dates of the various payments.

· We have not overlooked *Industrial Trust Co.* v. *Parks* (57 R. I. 363). There, however, as the court pointed out, " each of the contending counsel asserts or admits that if his contention is not sustained by this court, the payments should be apportioned between income and principal *according to the doctrine of conversion of wasting assets.*" A temporary apportionment on that basis was directed but with a recalculation later in a manner indicated by app oving reference to the earlier decision of *R. I. Hospital Trust Co.* v. *Tucker* (52 R. I. 277). In that latter case the court said, of non-dividend paying stocks (at p. 280): " As to the shares not sold, we cannot agree with the contention of the life tenant that he is entitled to receive, at regular intervals until they are sold, interest at 6% on the inven ory value of said shares. It is clear that such procedure might

result in turning over to the life tenant, in addition to proper income, a large amount of the capital, which of course must be retained for the ultimate benefit of the remaindermen, and a very practical objection is that the trustee has no funds from which to pay such interest. The authorities cited do not support the contention."

That decision is in accord with *Furniss* v. *Cruikshank* (230 N. Y. 495), which is cited in the opinion.

*Rubenstein* v. *Rubenstein* (221 App. Div. 612, 615) is not in point. There the testator, owner of a twenty-one year lease, assigned it " at an increased rental of $1,200 per annum." It was pointed out that the $1,200 per annum was not rental but " the purchase price on the sale of an interest in real estate paid in installments extending over a period of years " and that the annual payments were principal. The question decided was as to the nature of the asset and no consideration was given to the question of apportionment of the payments between principal and income. Incidentally the *Rubenstein* case was distinguished and in large measure disapproved in *Industrial Trust Co.* v. *Parks* (*supra*).

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed and the matter remitted to the Surrogate's Court for further proceedings in accordance with this opinion, with costs in all courts to all parties appearing separately and filing briefs payable out of the estate.

FINCH, RIPPEY and LEWIS, JJ., concur; LEHMAN, Ch. J., LOUGHRAN and DESMOND, JJ., dissent from so much of the opinion and decision as finds an intention to apportion.

Ordered accordingly.