In the Matter of the Accounting of New York Trust Company, as Surviving Trustee, and Florence Sinclaire, as Successor Trustee under the Will of Thomas R. Sinclaire, Deceased.

Surrogate's Court, Kings County, April 16, 1951.

190

*Milbank, Tweed, Hope & Hadley* for trustees, petitioners.

*Chrystie & Chrystie* for Matilda W. Sinclaire, respondent.

*Louis Levine,* special guardian for infants, respondents.

RUBENSTEIN, S.  In connection with its application for judicial settlement of intermediate and supplemental accounts, the trustee seeks instructions concerning its right to invest in legal securities not provided for by testator's will and directions for apportionment between principal and income of the proceeds of the sale of real property purchased by it.

The will, executed in 1895, restricts the trustee to investments in improved real estate in that part of the city of New York lying between the North River and the East River and below the Harlem River and Spuyten Duyvil Creek.  The trustees are also authorized to invest in " bonds and mortgages (which) shall not exceed the two-thirds of the actual market value of the property " on which the mortgage is taken.  The trustee is directed to maintain the investments so that at least one half of the funds shall be in real estate in the aforesaid area and not elsewhere.

The court agrees that the value of realty in the area described is extremely high and, also, that mortgages based on such valuations might prove high mortgages in a declining market with a resulting loss to the fund.  Under such circumstances and the lack in the area since the cessation of World War II of new construction suitable for investment by the trustee and the entrance of Federal, State and municipal authorities and insurance companies into the field of housing, the opportunities for mortgage investments required by the will are extremely scarce.  As indicated, the trustee is restricted to loans not exceeding two thirds of the value of the property whereas the Federal Housing Administration insures loans up to a value of 90% of the real estate.

Additionally, the brisk competition between savings banks, insurance companies, savings and loan associations and other lending companies has depleted the available mortgage market.  These factors, apart from the advanced age of the life beneficiary, require the court to permit a deviation from the terms of the will.  It is evident that the provisions thereof have become impracticable and impossible of fulfillment.  It cannot be, as indicated in *Matter of Young* (178 Misc. 378, 381), that testator intended the trustee " to perform the impossible and particularly is this true when the donor undoubtedly did not foresee

the situation which today faces her trustee.'' Accordingly, the court will permit the trustee to purchase legal investments other than those provided for in the will.

With reference to the further prayer of the trustee, the court holds that an apportionment of the realty held by the trustee as an investment is required under the circumstances disclosed.

The property was acquired by testator's executors in 1909 pursuant to testamentary authority. It was turned over to the trustee at an inventory value of $125,000. In February, 1948, it was sold for $70,000, the trustee receiving $22,500 in cash and a purchase-money mortgage for the balance. Prior thereto, from 1938 to the date of sale, this property was operated at a net loss for the period, of $748.

Testator's concern for the income beneficiaries is clear from the will; its meticulous provisions make manifest his intention to give them income from all of the trust property. Consequently, when this asset representing a very considerable portion of the trust estate became unproductive, it was incumbent on the trustee, acting in conformity with its duty to make the assets they hold productive, to dispose of it and reinvest the proceeds in income producing property. (2 Scott on Trusts, § 240, pp. 1346–1348; see, also, *Lawrence* v. *Littlefield,* 215 N. Y. 561; *Furniss* v. *Cruikshank,* 230 N. Y. 495; *Matter of Jackson,* 258 N. Y. 281; *Matter of Rowland,* 273 N. Y. 100; *Matter of Pennock,* 285 N. Y. 475; *Matter of Hubbell,* 302 N. Y. 246; *Edwards* v. *Edwards,* 183 Mass. 581, and *Rhode Island Hosp. Trust Co.* v. *Tucker,* 52 R. I. 277.) As the Court of Appeals said in *Matter of Hubbell* (*supra,* p. 256) '' As a corollary to that general duty — to employ the estate's assets profitably — there arises the further duty to sell or convert unproductive assets and reinvest the proceeds.''

While the duty to dispose of the property arose at the time its unproductiveness became clear, the determination of the time to sell and the consequent retention of the property until a fair price could be obtained were, in this instance, properly the province of the trustee exercising its best business judgment. (See *Matter of Otis,* 276 N. Y. 101, 114, and *Edwards* v. *Edwards, supra.*) Although the income beneficiaries may have benefited indirectly as a result of a better price when actually sold, nevertheless, during the period of retention, they did not receive the income testator intended they should have had. The property was not a security for principal alone; it was for income as well. (*Matter of Chapal,* 269 N. Y. 464, 472.) In fairness to both income

and principal its proceeds should be apportioned irrespective of the price at which it was sold, or whether it brought a price higher or lower than its inventory value. (*Lawrence* v. *Littlefield, supra.*) " It is not to be assumed that a testator intends that a provision of income  *  *  *  shall be rendered nugatory by delay " was the argument which prevailed in the *Lawrence* case (*supra,* pp. 568–569) ; see *Matter of Jackson* (*supra,* p. 289).

This case does not present the problem which arises when testator owned, during his lifetime, assets which were unproductive at his death or which became unproductive thereafter. In the face of testator's knowledge that those assets were unprofitable or likely to become so, the courts, to direct apportionment of the proceeds, have had to find an intent to benefit the life tenant rather than the remainderman. (See *Matter of Rowland, supra,* and *Matter of Satterwhite,* 262 N. Y. 339.) In the instant case, this problem is absent. Here, liquid assets were invested subsequent to testator's death pursuant to authority in the will to invest in " unencumbered *improved* real estate in fee simple " (emphasis supplied). From such investments, testator directed that " rents  *  *  *  shall be collected." From this, an inference to benefit the remaindermen at the expense of the income beneficiaries would be wholly unwarranted. (See *Matter of Rowland, supra,* and *Matter of Satterwhite, supra.*) Moreover, the fact that this property was not purchased by testator but by his fiduciaries does not here preclude apportionment. In proper cases, a share of the sum ultimately realized on investments purchased by trustees has been apportioned to the life tenant. (See, e.g., the salvage of mortgage investments, *Matter of Chapal, supra,* revg. 245 App. Div. 818, and 2 Scott on Trusts, § 241.3, p. 1367.)

It must be noted that in cases such as this " Authorities are of little help " (*Furniss* v. *Cruikshank,* 230 N. Y. 495, 505, *supra*) and " that no rule can be final for all cases " (*Matter of Otis,* 276 N. Y. 101, 115, *supra*). The decision here is based on the facts of this case. By those facts, the court is persuaded that the amount received on the sale of this property must be apportioned between income and principal.

Apportionment should be made according to the formula prescribed in section 241 of the Restatement of the Law of Trusts, and in *Matter of Rowland* (*supra*). The life tenants are entitled to income from January 1, 1938, to the date of sale at the rate of 3% per annum in that computation.

Submit decree, on notice, accordingly.