In the Matter of the Estate of ELI B. SPRINGS, Deceased.

Surrogate's Court, New York County, February 27, 1937.

*Mitchell, Taylor, Capron & Marsh* [*James D. Ouchterloney* and *Earle J. Starkey* of counsel], for the accounting trustees.

*Lord, Day & Lord* [*Allen E. Foster* of counsel], for the objectant.

*Jacob Florea*, special guardian.

FOLEY, S.   The issues raised by the objections to the account involve a construction of the will and codicils executed by the testator.   There is no dispute as to the facts.   The testator was a man of advanced years and was possessed of a fortune of upwards of $1,000,000.   The testamentary plan of the testator directed the payment of general legacies, the payment of two gifts in the nature of annuities aggregating $11,200 a year, and the division of the

residue among his relatives either outright or in trust. Following the collapse of values in 1929 the testator found that his income from his holdings was reduced to practically nothing. Through the medium of a corporation he was the owner of real property of great intrinsic value but which was operating with a large yearly deficit. Three days before his death in 1933 the testator executed a codicil to his will, the unusual provisions of which clearly show that he was aware of the difficulties that might arise and actually resulted in the administration of his estate. The fifth paragraph of this codicil provides as follows: " In view of the demoralization now prevailing as to property values of all kinds, I give unto my Executors power to hold all of my property, real, personal and mixed, for so long a time as they may deem advisable and expedient, with the view of and to the end that they shall manage my estate to the best advantage and shall postpone the turning over of any funds to my Trustees until such time as my Executors may think best, and in this connection, I give to them power and authority to anticipate the setting up or establishment of the various trusts enumerated under my last will and testament, by paying when and as they deem proper to the legatees and beneficiaries of any and all trusts provided for in my will, such income as they may deem best."

The seventh paragraph of this codicil contains a very broad exoneration clause and directs that the executors be relieved from liability provided they use their best judgment in settling the estate.

The deficit incurred in managing the real property exceeded the income of the personalty during the period accounted for. The executors have paid this deficit from principal and in addition they have made advances to the income beneficiaries. This procedure has been objected to by the trustees who will ultimately administer one-half of the residuary estate.

The objections are overruled. The executors have acted within the letter and the spirit of the authority conferred on them by the second codicil to the will. The unique language of this codicil, quoted above, provided an adequate means for the salvage of the estate and its gradual liquidation. At the same time the directions protected the income beneficiaries during the administration of the estate and the setting up of the trusts.

The testator by his foresight has expressly obviated the necessity for a search for his probable intent. The language of the second codicil must be interpreted as evidence of a clear purpose to require that the excess carrying charges over and above the income from the property should be treated as a general administration expense payable from principal. The real property is a valuable asset and must be preserved but not solely at the expense of the income

beneficiaries. At the time of the execution of the codicil the testator was fully aware of the precarious condition of his estate. His expressed intention is in accord with the trend of the recent decisions making exception in a proper case to the general rule laid down in *Matter of Albertson* (113 N. Y. 434) that income is the primary source for the payment of carrying charges on real property which is the subject-matter of a trust or a legal life estate. In *Matter of Rowland* (273 N. Y. 100) the Court of Appeals applied the exception to the general rule even where the real property had been productive at the date of the testator's death but where the circumstances and the terms of the will showed an imputed intent of the testator to impose the carrying charges on principal.

The executors here have properly paid the excess of carrying charges from principal. These charges under the mandate of the will are general administration expenses. (*Matter of Rowland, supra; Matter of Gary*, 261 N. Y. 244.)

I hold that the fifth paragraph of the second codicil authorized the executors to make payments to the income beneficiaries from whatever source funds were available. The intent to provide financial support is clearly evident. The executors were given wide discretion to advance such moneys and in my opinion were authorized to make payment in any event whether from principal or income. The language of the fifth paragraph of the second codicil considered in connection with the general plan of the testator and the facts presented is tantamount to a power to invade principal. The arbitrary method of fixing the amounts payable to the life tenant is not disproportionate to the size of the estate and the estimated interest of each life tenant.

The general request of the trustees for instructions as to the future management of the realty must be denied without prejudice at the present time. The request is not specific and the court has not been apprised of the present status of the realty or any proposed method of management thereof. The trustees may renew their request for instructions when the necessity therefor arises.

Submit decree on notice construing the will and settling the account accordingly.