In the Matter of the Estate of SYDNEY A. GUGGENHEIMER, Deceased.

Surrogate's Court, New York County, May 24, 1938.

*Guggenheimer & Untermyer* [*Mitchell Salem Fisher, Raphael Brill* and *Alan Nordlinger* of counsel], for the petitioners.

**John J. Bennett, Jr.,** *Attorney-General,* for the State of New York.

DELEHANTY, S. The trustees under the will of deceased seek a construction of article VII of the will to determine the meaning and effect of certain provisions of the primary trust established for the benefit of deceased's two sisters for life and to determine whether the disposition of the residuary estate is in all respects valid.

Article VII of the will reads:

" I give, devise and bequeath all of the rest, residue and remainder of my property, real and personal, of every kind and description wherever situated, including all property over which I may have power of appointment, all such powers being hereby expressly exercised, and including all gifts which for any reason shall lapse or fail (herein sometimes called my ' residuary estate ') to my trustees IN TRUST for the following uses and purposes:

" (A) The premises now occupied by me and known as No. 334 West 71st Street, Borough of Manhattan, City and State of New York, shall be held by my trustees in accordance with the following provisions: I direct that both or either of my said two sisters Sarah Guggenheimer and Laura Guggenheimer shall have the right free from the payment of rent or other charges therefor by or on behalf of my trustees or the trust, to occupy the said premises as long as they or she may desire to do so, and such occupancy need not be continuous; and I further direct that, subject to the right of occupancy as aforesaid, the said premises shall constitute a part of my residuary estate and shall be dealt with and disposed of accordingly, provided, however, that the said premises shall not be leased or sold or the said right of occupancy otherwise interfered with without the written consent of my said two sisters or of such one of them as may be living, unless my said two sisters or the survivor of them shall have previously signified by a written instrument signed by them or the survivor of them that they or she, as the case may be, no longer desires to have the right to occupy the said premises.

" (B) In the event that my said two sisters, or the survivor of them, shall have signified that they or she, as the case may be, no longer desires to have the right to occupy the said premises in accordance with the provisions of the preceding subdivision (A), I direct my trustees to purchase another dwelling house or place of residence if and when requested to do so by my said sisters or the survivor of them, for such price and upon such terms and conditions as shall be agreeable to my said two sisters or the survivor

of them, as evidenced by an instrument in writing, signed by my said two sisters or the survivor of them; and I authorize and empower my trustees to make such purchases regardless of whether the premises referred to in the preceding subdivision (A) shall have been sold, and to use such portion of the principal of my residuary estate as may be necessary to pay the purchase price thereof; and I direct that the dwelling house or other place of residence so purchased shall be held by my trustees in the same manner as is provided in the preceding subdivision (A) with respect to the premises described therein.

" (C) To hold my residuary estate in trust during the lifetime of the one of my said two sisters who shall live the longer; and subject to the provisions of the preceding subdivisions (A) and (B) hereof, to manage, invest and reinvest the same; to collect and receive the income thereof; and, after deducting all charges and expenses properly payable therefrom, to pay the net income thereof at least quarter-annually in equal shares to my said two sisters as long as they both shall live, and after the death of one of them, or after my death should only one of them survive me, to pay all of the net income thereof at least quarter-annually to the other one of my said two sisters until her death.

" (D) From time to time to pay over to or apply for the benefit of my said two sisters such portion or portions of the principal of the trust fund as my trustees in their discretion shall deem suitable and proper to defray unusual expenses which may be occasioned by illness or other extraordinary circumstances, including a substantial increase in the cost of living over the rate prevailing at the time of the execution of this will, provided, however, that the amount of principal so paid to or applied for the benefit of each sister under the provisisions of this subdivision (D) shall not exceed in the aggregate the sum of three thousand ($3,000) dollars for each sister in any one year.

" (E) In addition to the other payments herein provided for, to pay over from time to time to each of my said two sisters such portion or portions of the principal of the Trust fund as she may request in a written instrument, signed by her, provided however, that the amount of principal so paid over to each of my said two sisters shall not exceed in the aggregate the sum of one thousand ($1,000) dollars for each sister in any one year.

" (F) Upon the death of the survivor of my said two sisters, or upon my death should neither of them survive me, to dispose of my residuary estate, or the undistributed portion thereof, if any, as follows:

" (1) I direct my trustees to pay the sum of twenty ($20) dollars a week to my cousin, Benjamin Regenstein, son of Louis and Tracy Regenstein of Atlanta, Georgia, until his death, the payment of this annuity to be a charge upon the net income of my residuary estate and, if necessary, upon the principal thereof.

" (2) I give, devise and bequeath the balance of my residuary estate not required to satisfy the annuity provided for in the preceding sub-paragraph (1) to the said The Chase National Bank of the City of New York, or its successor, as trustee in trust for the uses and purposes and upon the terms contained in the resolution and declaration of trust creating the New York Community Trust heretofore adopted by the Board of Directors of the said The Chase National Bank of the City of New York, and filed for record as provided by law, all of which resolution and declaration is hereby incorporated herein; and I request that this trust fund shall be designated and referred to as the ' Sydney A. Guggenheimer Memorial Fund; ' and I direct that the net income from this trust fund shall be expended for the relief and assistance of worthy poor people in such manner as may be deemed suitable and proper; but I desire that in distributing such net income preference shall be given to worthy poor people in the following order:

" (a) First, first cousins of mine and their children and grandchildren and first cousins of my father or my mother and their children and grandchildren and the children of their grandchildren (the term grandchildren as used herein to mean only children of children and not more remote descendants), but the determination from time to time of the Distribution Committee of the New York Community Trust, or of whoever may have charge of the distribution of the net income of this trust fund, as to what persons shall constitute worthy needy relatives of mine within the classes specified hereinabove shall be final and conclusive, nor shall it be necessary as a prerequisite before distributing such net income to other persons to investigate whether there are any relatives of mine within the classes specified hereinabove in distress, but reliance may be placed solely upon such applications or information as may be voluntarily presented.

" (b) Second, orphans (until they are old enough to take care of themselves) and the aged residing in the City of New York or its environs; provided, however, that no descendants of Samuel E. Bloch or my cousin Rosz Hirschfield Bloch, his wife, of New York City, shall receive any distributions of income hereunder, no provisions having been made by me for any of their descendants in this, my will, for reasons which I consider good and sufficient; and

provided further, that I request that the sum of ten ($10) dollars per week be paid to any descendant in distress of my uncles Leopold Henle and David Henle late of Philadelphia, Pennsylvania, (to and including their great-grandchildren) in preference to other relatives of mine."

The annuitant mentioned in subdivision (F) (1) predeceased the testator. Since the gift to him is an annuity the provisions for his benefit in no event would require consideration in applying the rule against suspension of the power of alienation and suspension of absolute ownership as defined by section 11 of the Personal Property Law and section 42 of the Real Property Law. (*Buchanan* v. *Little*, 154 N. Y. 147; *People's Trust Co.* v. *Flynn*, 188 id. 385.) Thus it follows that the primary trust is clearly valid.

A question is raised respecting the extent of the right of deceased's sisters to occupy the premises referred to in subdivision (A) of article VII free from the payment of rent or other charges therefor by or on behalf of the trustees or the trust estate. The court is asked to determine whether or not deceased intended that real estate taxes, water charges, assessments and expenditures for repairs or replacements were to be paid from the principal of the trust in order to relieve the sisters of deceased from payment thereof.

Unless a contrary intent is indicated by the will, the life beneficiary of a trust is required to pay the taxes and carrying charges on real property which constitutes a part of the trust estate. (*Spencer* v. *Spencer*, 219 N. Y. 459; *Matter of Albertson*, 113 id. 434.) If nothing had been said in the will about carrying charges they would be payable out of the income of the trust and so in effect payable by the life beneficiaries because they are entitled to the whole income of the trust. Deceased here has provided for payment out of the trust capital by directing that the sisters shall not assume the burden. If it were to be held that under the will the charges are payable out of income, freedom from the burden of carrying charges as directed in the will means nothing. That some benefit was intended is without question. Deceased was unmarried. His two sisters were his sole next of kin. He placed his entire residuary estate in trust for their benefit. He authorized the invasion of principal to the extent of $3,000 per year for each sister in the case of unusual expenses arising from illness or other causes or in the event of increased cost of living. In addition, he authorized additional invasion of principal to the extent of $1,000 for the benefit of either of them solely upon their own request. There is little doubt that deceased was first of all concerned with the needs of the sisters during their lives. That there was no dis-

position on his part to keep the principal absolutely intact is evidenced from the provisions for its invasion. The circumstances here establish deceased's intention to have the charges in question paid out of principal of the trust. In a case in which trustees were directed expressly to pay similar items out of a trust estate it was held that they were payable out of principal. (*Matter of Tracy*, 179 N. Y. 501.) The court holds, therefore, that such charges are not to be deducted from income.

The other questions presented have to do with the disposition of the trust estate after the death of deceased's sisters. It is apparent that deceased intended to create a charitable trust authorized or permitted by the provisions of section 12 of the Personal Property Law and section 113 of the Real Property Law. The provisions of these sections as far as here pertinent are substantially identical and read as follows: " No such gift or devise contained in any will * * * shall be deemed invalid by reason of the incorporation by reference in the will of any written or printed resolution, declaration or deed of trust identified as existing prior to the execution of such will and adopted or made by any corporation authorized by law to accept and execute trusts, creating a trust to assist, encourage and promote the well-being or well-doing of mankind or of the inhabitants of any community, provided that a copy of such resolution, declaration or deed of trust * * * shall have been filed for record in the office of the Secretary of State of the State of New York and in the office in which conveyances of real property are required by law to be filed for record in the county in which said corporation has its principal place of business * * *. Any gift * * * so made to any such corporation, in trust for the uses and purposes contained in such resolution, declaration or deed of trust, shall be valid and effectual notwithstanding that the terms, conditions, uses and purposes of such gift or devise are included only by such reference in the will."

Consideration must be given to the nature of the gift to the Chase National Bank of the City of New York under clause (2) of subdivision (F) of article VII. The nominated bank is described as a trustee to hold the property " for the uses and purposes and upon the terms contained in the resolution and declaration of trust creating The New York Community Trust." The Chase National Bank concededly has adopted a resolution and declaration of trust creating what is commonly known as " The New York Community Trust."

The preamble of this resolution and declaration of trust recites that the history of charitable bequests has demonstrated that greater good could have been accomplished if the terms of trusts

established by grantors or testators had permitted of change in the particular objects or channels prescribed for the trustee because in some instances changes in conditions had rendered literal compliance with specific objects impracticable or impossible. The preamble further recites the need for a general trust plan to meet changing conditions with flexibility of distribution so as to offer opportunity to persons of moderate means as well as persons of wealth to make their gifts to trustees of their own selection more effective by providing for distribution as if part of an aggregate fund.

The resolution labels the trust as " The New York Community Trust " and then declares the willingness of the Chase National Bank of the City of New York to accept any gift in trust " for *public* educational, charitable or benevolent uses and purposes." (Italics supplied.) The resolution recognizes any special desires of the donor but makes a so-called distribution committee the ultimate judge of the use of the funds. This distribution committee is charged with the duty of selecting the particular objectives from a number, all public in character, which vary from the purely personal relief of the needy to the more impersonal objectives which have been held to be charitable. The personnel of the committee is selected after nominations are received from sources designed to insure the entire impartiality of the distribution committee. The operations of the committee are carefully prescribed. The powers and authority of the trustee are stated at length. Accounts of the administration of the community trust are provided for. Access to such accounts is given to the Attorney-General of the State. Precaution is taken to avoid failure of the whole scheme if particular portions of it are held to be invalid. Finally the resolution says:

" XI. The maker of any gift, grant, devise or bequest for the uses and purposes herein expressed, and upon and subject to the provisions hereof and all persons claiming by, through or under him and each Trustee by the acceptance thereof shall be conclusively deemed to have agreed that the Distribution Committee may, by resolution adopted by the affirmative vote of nine of its members, when approved by resolution adopted by the affirmative vote of three-fourths of all the members of the Trustees' Committee, from time to time or at anytime (1) modify, supplement or restrict the educational, charitable and benevolent uses and purposes to which the funds available for distribution may be applied herein; (2) change the method of appointment of the members or the Distribution Committee or increase or reduce the number of its members; (3) construe any provision of this resolution and declara-

tion, which construction and action thereunder in good faith shall be conclusive; (4) supply any defect or omission herein which said Committees may then deem advisable to carry out the purposes of The New York Community Trust properly and effectively; (5) amend the provisions hereof in any respect which shall be consistent with the application of the entire net income and the principal of any gift, grant, devise or bequest for public educational, charitable or benevolent uses and purposes and for no other use or purpose whatever."

The broad authority granted to the distribution committee under clause XI just quoted is to be exercised in the last analysis for public charitable purposes. The entire resolution and declaration of trust is permeated with the idea of public charity and none of its text departs from the general aim of serving the public good.

In an unreported decision of March 22, 1938, Mr. Surrogate KAUFMAN of Ulster county held valid a gift to The New York Community Trust though in the will then under consideration by him no trustee was named. This court is in agreement with that ruling. Here no difficulty of the sort encountered by Mr. Surrogate KAUFMAN is present since the gift is to the Chase National Bank of the City of New York as trustee. The statute expressly authorizes the plan. (Pers. Prop. Law, § 12; Real Prop. Law, § 113. Compare *Allen* v. *Stevens*, 161 N. Y. 122, 128, 147; *Matter of LeFevre*, 233 id. 138.) The court holds that the gift is valid unless determination of the other question presented requires a holding of invalidity.

The other question is whether or not the provisions in the will are so circumscribed by the suggestions of the testator respecting his immediate family that the court should hold the plan invalid. While the mere declaration that a gift is for public purposes will not survive a showing that it is truly for private purposes (*Matter of Beekman*, 232 N. Y. 365), the suggestion that the trustee exercise a preference in favor of relatives or friends of the testator does not suffice to invalidate the gift. (*Matter of MacDowell*, 217 N. Y. 454.) The last cited case reviews the authorities on the subject and is controlling here. The testator here has directed that the money " shall be expended for the relief and assistance of worthy poor people." His general purpose to perform a public charity is apparent. His plan is not invalidated by his inclusions or his exclusions. The authority granted to the trustee is to use the funds in the public interest. Accordingly the court holds the gift over of the balance in the residuary after the death of the chief objects of deceased's bounty is valid.

Submit decree construing the will accordingly.