In the Matter of the Will of FINLEY J. SHEPARD, Deceased.

Surrogate's Court, New York County, November 21, 1945.

*De Forest & Elder* for Charles C. Huitt, as executor and trustee, and another, petitioners.

*Pentlarge & Johnson* for Olivia S. Burr, respondent.

*Townley, Updike & Carter* for Helen S. Gaines, respondent.

*Bernard B. Smith* for Finley J. Shepard, respondent.

*James N. Vaughan,* special guardian for John S. Burr and others, infants.

DELEHANTY, S. In this construction proceeding the parties have stipulated the facts deemed by them to be pertinent. No party has interposed any objection to the materiality of any stipulated fact nor has any party sought leave to present further evidence. The controversy is deemed submitted for decision upon the facts stipulated and upon the record of the proceeding.

Deceased was the residuary legatee under the will of his wife. Through her he received certain real properties in respect of the burden of the carrying charges on which the court must give direction. There are five parcels of realty in the estate. Four of these were nonproductive. The fifth either carried itself or so nearly did so that the parties do not seek a ruling respecting the burden of any possible deficit. One of the four unproductive properties was used by deceased as a dwelling. Another building was used as a stable and garage and as living quarters for household employees. A farm property was used as a summer residence. Adjoining the city residence was a vacant lot which produced no income. Except during a period when a merchandising concern hired the residence as part of a program for selling its contents the residence was wholly nonproductive. The garage and servants' quarters never produced any income. The value of the farm production was trifling as compared with its operating expenses.

All four of the nonproductive properties were sold before the end of 1944. The total deficits in their operation aggregated $66,951.13. The income beneficiaries ask that this sum be charged to the principal account and in addition they ask that the net sales proceeds be apportioned between principal and

income. The special guardian points out that the total income of all trust assets was very large. It appears to be conceded by the life beneficiaries that as of the date of the last sale of unproductive realty the income from all other sources than rents aggregated about $127,000. On the basis of these figures, the special guardian for the infant remainderman asserts that income should bear all the carrying charges of the realty. He contends further that all of the sales proceeds should be placed in capital account and not apportioned.

Under the will of deceased the residuary is divided into shares which are placed in trust respectively for the adopted children of deceased. Each child during his life is to have the income on his respective share with the proviso that if the child live to January 22, 1952, he should then have one half the principal. The remaining half is continued in trust and on the death of the income beneficiary is payable to his lawful issue per stirpes or in default of such issue to the other children of deceased or their issue. The will evinces an intention to care primarily for the income beneficiaries. They were deceased's children and the particular objects of his concern. He knew of course that his city residence, his garage and his farm involved, individually and collectively, heavy carrying charges with no offsetting income. It must be assumed in such circumstances that he did not intend to deprive his children of the income from his productive assets for the possible future benefit of their issue. The court holds that the carrying charges on the unproductive realty are to be treated as capital charges. In the case of any primary beneficiary who lives to the date fixed in the will he will bear one half of these charges by reason of the diminution in the value of the one-half share then payable.

This ruling requires in principle that the court shall also apportion the net proceeds of the sale of these unproductive parcels. The definite judicial trend toward apportionment of the proceeds of the sale of unproductive property is evidenced clearly by the decision in *Matter of Rowland* (273 N. Y. 100). There the Court of Appeals ascribed to a testator an intent to convert real property if it became unproductive after his death. The property under consideration in that case was highly productive at the date of the will and at the testator's death. Notwithstanding that fact there was read into the testator's will under consideration a direction for conversion for the protection of the income beneficiary who in that case was the testator's wife. Less strikingly, but nonetheless effectively, a similar result has been reached in many instances (*Matter of Satterwhite,* 262 N. Y.

339, 343; *Matter of Jackson,* 258 N. Y. 281; *Furniss* v. *Cruik-shank,* 230 N. Y. 495; *Spencer* v. *Spencer,* 219 N. Y. 459; *Lawrence* v. *Littlefield,* 215 N. Y. 561). On these authorities the court directs apportionment of the net proceeds after taking into account the operating losses. The formula set forth in section 241 of the Restatement of the Law of Trusts is to be followed.

Petitioner also asks that the court determine the respective rights of the income and remainder interests in the trust created by the will so far as they are affected by a certain judgment in the Supreme Court entered in 1927 in an action to which the wife of deceased was a party. In that action a judgment was entered which imposed upon deceased's wife liabilities which are in part absolutely fixed and in part contingent. Ascertainment of the maximum extent of the liability of deceased's wife under the judgment is not possible until the death of a person who is still living, who is now seventy-four and is presently without issue. While this individual lives, the fixed obligation of deceased's wife under the judgment is to contribute $30,000 annually toward a total annual payment of $90,000. Deceased's wife is liable for the full $90,000 payment so far as the beneficiaries thereof are concerned but so far as her co-obligors are concerned is required to pay the remaining $60,000 or any unpaid part thereof only if her co-obligors default. Separately under the same judgment a total of $500,000 might become payable by deceased's wife if the now seventy-four year-old individual should die leaving issue entitled to take under the will of his father. To secure this contingent liability a deposit was made by deceased's wife in her lifetime under terms which might require the impounding of income on the securities which constitute the capital of the deposit. The fixed $30,000 annual liability (and any addition thereto) is not a charge on the deposit but constitutes a charge upon the general assets of deceased's wife. Up to this point the liability has been discharged by semi-annual payments of $15,000. It is not yet possible to know whether or not the $500,000 deposit will be required to satisfy the provisions of the judgment. So long as deceased lived it was immaterial how the annual $30,000 payment was made out of his wife's assets. In his character as her residuary legatee he was entitled both to principal and income. Since the liability of his deceased wife's estate had not been cleared when deceased died the tenor of his will brings to the fore a problem which theretofore was nonexistent.

The estate of deceased's wife being under administration and ample assets being in the hands of the fiduciaries of that estate. to discharge any probable liability of that estate under the judg· ment, it would be possible to defer decision on the problem to a later period. But the question is not wholly academic at this time. The executors of this estate have received substantial payments on account of the residuary interest of deceased in his wife's estate and the assets thus received are possibly subject to recapture if needed to satisfy the judgment against deceased's wife. Such demand for repayment is most unlikely but at some future date there will probably come into the hands of the fiduciaries of this estate a residue of property now under administration in the wife's estate. Adjustment will necessarily have to be made between principal and income accounts when that event occurs and so the problem may as well be considered at this time.

The special guardian contends that the annual payments are a charge to income only. He takes a secondary position that if income is not required to pay the whole sum then payment should be apportioned between principal and income and suggests two alternative methods for the apportionment. The income beneficiaries ask complete exoneration of their income and ask that the payment be dealt with as a capital charge exclusively. The contending parties appear not to have found any controlling precedent in this State. The research of the court has not disclosed any case directly in point. The parties refer to the English cases and each finds some support therein. Such cases are numerous but they may be sufficiently illustrated by those most frequently referred to by the English judges. The concepts of the English judges are best seen in *Fletcher* v. *Stevenson* (3 Hare 360), *Yates* v. *Yates* (28 Beav. 637), *Allhusen* v. *Whittell* (L. R. 4 Eq. 295), *In re Muffett* (39 Ch. D. 534), *In re Bacon* (62 L. J. [Ch.] 445, *In re Harrison* (43 Ch. D. 55), *In re Dawson* ([1906] 2 Ch. 211), *In re Henry* ([1907] 1 Ch. 30) and *In re Perkins* ([1907] 2 Ch. 596).

A review of these cases discloses that the English courts dealt with annuity payments (whether absolutely due or contingently due) as ordinary debts. The differences in results in the cases seem to be occasioned by differences in application by the English judges of what is frequently referred to as the " true residue " rule. In the application of that rule the judges sometimes say that the. values respectively of the life estate and of the remainder should be ascertained and contributions

made on that basis. In other cases it is suggested that the life tenant can bear the annuity charges and thereupon will obtain a charge against capital in an equal amount. Again, suggestion is made that the payment be provided for by a sale or mortgage of the capital with the life tenant's bearing the interest cost of a mortgage if one be procured. The ultimate division of opinion among the judges is illustrated by the views of Kekewich, J., in the *Bacon* and *Henry* cases (*supra*) on the one part, and the views of Swinfen Eady, J., in the *Dawson* and *Perkins* cases (*supra*) on the other. Kekewich, J., said in *Matter of Bacon* (*supra*) that the payment was to be made by sale or mortgage of capital with the life beneficiary's contributing to the extent of loss of income on the capital sold or to the extent of bearing the interest on the mortgage. In *Matter of Henry* (*supra*) the same judge said that if the life tenant advanced the annuity payments she could have the money back when the capital was available to pay her. He followed his prior rule in the *Bacon* case (*supra*) and said that the life tenant should contribute only by loss of interest on the capital sold or by the amount of interest paid on the mortgage of the capital. On the other hand, Swinfen Eady, J., said in the *Dawson* case (*supra*) that the actuarial values of the life estate and the reversion were to be ascertained and contributions to each annuity payment made in the proportions thus ascertained. In the *Perkins* case (*supra*) the same judge said that capital should be charged that sum which, with interest at the prevailing rate from the controlling date, would have met the particular installment due on the annuity. He directed that income bear the burden of the difference.

The " true residue " rule was once of some consequence in the administration of estates in this State (*Matter of Benson,* 96 N. Y. 499). The *Benson* rule however is no longer applicable because of statutory changes which have occurred since that rule was first formulated. The true nature of the obligation here in question is that of a capital charge. The fact that the total of the payments cannot be predicted does not alter the essential nature of the burden on the assets coming into this estate from the estate of deceased's wife. Such assets must provide the capital sum necessary to make each respective payment when it is due. In the interval the accruing income goes to the life beneficiary of income so far as the funds reach this estate. When a payment is made the fund producing income is diminished in that degree. The loss of income from

that point forward on the amount thus appropriated constitutes the only contribution by income account which is required under our law. This result is not in conflict with *Barnes* v. *Klug* (129 App. Div. 192) cited by the special guardian. The point here at issue was not considered by that court.

Submit, on notice, decree construing the will accordingly.