In the Matter of the Accounting of ETHEL R. FURRY, as Administratrix C. T. A. of EDWARD B. FURRY, Deceased.

Surrogate's Court, Broome County, November 3, 1949.

*John D. Smith* for administratrix, *c. t. a.,* petitioner.

*George L. Ingalls,* special guardian for Mary J. Reynolds and others, infants, and unborn lineal descendants of Ethel M. Reynolds, who may be living at her death.

PAGE, S.   The immediate beneficiary of the entire net estate of the testator is his widow, Ethel R. Furry. Except for some minor bequests to the widow, all the net estate is directed to be

held in trust for her life benefit. Upon her death, the trust is limited upon the life of Ethel M. Reynolds, a niece of testator's widow. The remainder is directed to be divided into two equal parts, one of which devolves to the Union Presbyterian Church of Endicott, New York, and the other to '' lineal descendants '' of said Ethel M. Reynolds or, failing any such, then the whole remainder to the said church.

The only additional material provisions of the will are that the trust created primarily for the widow's benefit is subject to invasion of corpus in the event of '' an accident, catastrophe, emergency or other prolonged illness '' and that a power of sale of real estate is accorded subject, however, to the right of the widow to continue to live at testator's last residence, 510 Exchange Avenue, Endicott, New York, as long as she may choose to do so, the said trustee to '' *pay all charges accruing on said property while she so occupies same* ''. No formal judicial construction of provisions of the will here in question is necessary or requested, except as to the words comprising the last above-quoted clause thereof, with particular reference to the words, '' charges accruing ''.

The bare direction to the trustee to pay '' charges accruing '' leaves two questions as to which it might be acting in the dark and at its peril, unless a construction of the language in question is determined now at the point where the administration of the estate is terminated and the taking over of the trust's corpus by the trustee is at its inception. These two questions are: (1) as to the source of payment of such '' charges '', and (2) what specific items of costs in connection with the real property the testator intended by the words '' charges accruing ''.

Since this is a trust, the trustee will receive all the income arising from the corpus thereof and dispose of it periodically during the term of the trust. Such income, to the extent that the same is net, is payable to the widow as long as she lives. The question in this connection is whether usual '' carrying charges '' of the real property in question are to be deemed payable from income accruing to the trustee or whether the intent and purpose of the testator should be taken to be that such expenditures shall be made from funds realized from the trust's corpus as far as necessary for payment of the same.

The general rule, in the absence of any specific direction as to the source of payment of carrying charges of real property involved in a legal life estate or included in a trust, is that such expenses are payable by the legal life tenant, or from income in

the hands of the trustee, as the case may be. A frequently cited and leading case on this particular proposition is *Matter of Albertson* (113 N. Y. 434); another case to similar effect and reaffirming this rule is *Woodward* v. *James* (115 N. Y. 346).

However, if not inconsistent with language found in the will, in cases where such real property is unproductive, or not yielding any pecuniary income because utilized as the rent free dwelling of a life tenant or trust beneficiary, the above-stated rule is not invariably followed. In such instances, in the absence of a definite direction, various circumstances may be taken into consideration because of the probability that the true intent of the testator was not that the purported gift should, in effect, be a burden instead of a benefit, or that his bounty accorded to a primary object thereof should be cut down or emasculated to any drastic degree because of the necessity of incurring expenses incidental to the upkeep of such real property.

Of course, it was perfectly optional with the testator to have directed that specified costs of upkeep of the real property in question be paid from either of the two possible sources. But he did not do so. This was, presumably, through oversight on the part of testator or his draftsman, due to a failure to exercise that keen imagination which ought to be exercised by all will draftsmen in order to render all the will's provisions so crystal clear in their directions and devolutionary effects, and contemplated contingencies in relation thereto, that no necessity for a construction of any of the testamentary language would be necessary.

The construction question here presented provides, in a very simple and plain manner, a suggestion of what attorneys should always do with a tentative draft of a will before its execution. In this case, the will was written by an attorney, other than the present attorney for petitioner, in a competent and clear form except for the one bad spot in its composition necessitating the present construction. If the draft of proposed will had been studiously read by its draftsman with a view to detecting ambiguous language and clarifying it so as to forestall possible questions of construction, he should, and undoubtedly would, have noted the ambiguity inherent in the words, " pay all charges accruing on said property while she so occupies same ". It would have been very apparent that this language should be amended. The attorney might have said to his client, " If we do not substitute a clearer direction as to this provision, there will be a more or less costly construction question arising in connection with your will before your estate can be finally

settled. Besides the expense, the court may not accurately guess what your precise intent was. I think you probably mean that your trustee is to pay certain charges in connection with the maintenance of the home consisting of such items as taxes, special assessments, water rates, insurance premiums and ordinary repairs out of principal so as not to deplete the income which you want your wife to receive.'' If the client said, '' Yes, that is what I do mean,'' then this clause would be amended to read, '' pay from principal all taxes, special assessments, water rates, insurance premiums and ordinary repairs in connection with said real property while it shall be so occupied by her.'' In a more complicated problem (e.g. directions as to vesting, or envisaging contingencies) as to the selection of testamentary (or contractual) language which would avoid all legal pitfalls and eliminate any and all ambiguity, the attorney should take the time and adopt the means (such as consulting an expert) necessary to evolve an unquestionably adequate linguistic solution before he submits the instrument for execution. In every instance where the suggestion implicit in this gratuitous comment is competently adopted and followed, the attorney is rendering better professional service, the estate is saved unnecessary expense and, eventually, some perplexed surrogate has one less '' headache ''.

In the present case, the testator's failure to prescribe the source of the payment of the charges in question either from one or the other of the two possible alternatives makes it presently necessary that his most probable intent be gathered as indicated by the composite consideration of all the various criteria determinative thereof.

One of the primary rules of construction is that any question of intent must be resolved from a consideration of the will as a whole, gathered from its '' four corners ''. In this connection, there are certain applicable observations. The testator first gave all of the net income from his entire estate to his wife. He next gave her the use of his residence to the full extent of her life if she shall choose to have it so. (If she might ever choose otherwise, the residence property must be sold and its proceeds incorporated in the trust for her benefit.) He also incorporated an invasion clause in relation to the trust to take care of his widow in the event of unforeseeable emergencies which he apparently contemplated might be beyond her financial ability to cope with.

As the secondary beneficiary of the trust he named, not his own, but his wife's niece, Ethel M. Reynolds. Finally, he pro-

vided for the eventual devolution of whatever remainder there might ultimately be to lineal descendants of this secondary trust beneficiary and the above-named church.

These provisions of the will indicate beyond any serious question that the primary intent of the testator was to provide for his widow in preference to any other beneficiary, none of whom were of any blood relationship to himself. He was a prominent industrialist who must, rationally, be assumed to have had in mind that the residence property would be unproductive of income as long as occupied by his widow, and that, if it might be necessary to use a great part of the income from the trust to pay carrying charges on the residence, it would endanger her security, only to result in some aggrandizement of gifts to other and secondary objects of his bounty. The invasion clause by itself indicates he thought he was providing for all contingencies including improbable emergencies.

I conclude that the testator's intent in respect to the direction to the trustee to " pay the same " (charges accruing) was that he meant that such charges be paid from corpus.

The next question is as to the scope and limitations of the testator's words, " charges accruing ". In the strictest possible sense, these would be limited to taxes and special municipal assessments. These are the only charges which accrue in the sense that they become liens against real property and accrue without involving any volition on the part of the owner. Even so primary a necessity as water could, conceivably, be dispensed with. Likewise insurance. Likewise repairs.

But, in view of the situation as a whole, I think, not the narrowest possible, but a somewhat more liberal construction should be adopted. I think that to be as narrow as possible, that is adopting a construction as if the testator had said, " taxes and assessments " only, would be partially disregarding and denying his true purpose and intent. On the other hand, in view of the words used by the testator in relation to the general rule that carrying charges of real property are on the life beneficiary, care must be taken to see that the construction be not too liberal either. In my view, the main determinative criterion is evolved by an identification of whatever items are necessary to maintain and preserve the property to the end that the remaindermen will ultimately come into something of value. These would include taxes and assessments (so that the title to the property would not be lost on a tax sale) ; water (so the plumbing will be maintained in operation especially as it is necessary in respect to first aid in controlling any fire which might

break out in the household); insurance (so that if there were a fire loss, the reimbursement of the same might be used to restore the premises), and ordinary repairs. The property here in question requires quite extensive present repairs and, naturally, the widow is desirous of living in a house in a good state of repair. However, this is only an incidental consideration. Its more important bearing is in relation to the necessity of repairs and proper reconditioning from time to time as a means of preserving the property so far as practicable and its value for those who have a future interest therein.

There are no words found in the will which would rationally, extend the construction of " charges accruing " to items such as charges for public utilities and fuel, even though keeping the house warm in winter does tend somewhat to safeguard its preservation. (See *Matter of Gabler,* 140 Misc. 581, mod. 235 App. Div. 807, affd. 261 N. Y. 517.)

In the light of authorities and guiding principles in respect to construing the testator's purpose and intent, as expressed by the words under construction herein in view of the conditions and circumstances surrounding the testator when he made his will, I reach the conclusion that the trustee is empowered and directed to pay all charges consisting of taxes, special assessments, insurance premiums, water and ordinary repairs (including reasonably frequent redecorating the interior and painting the exterior) from funds derived from the disposition of corpus assets, but is not entitled to make such expenditures for other necessary living expenses such as those above mentioned or others that could be brought to mind.

Questions of construction similar to those here involved have been similarly determined.

In construction cases, the issue is as to intent. Where its expression is ambiguous or incomplete, it must be determined, if possible, in accordance with criteria indicative of probability. When ambiguous expressions analogous to a direction to pay " charges accruing ", or other conditions and circumstances of equitable import, have been considered in conjunction with surrounding circumstances substantially similar to those found in the present case, bases of an implied intent have been recognized. Some of the leading authorities to this effect are: *Spencer* v. *Spencer* (219 N. Y. 459); *Lawrence* v. *Littlefield* (215 N. Y. 561); *Furniss* v. *Cruikshank* (230 N. Y. 495), and *Matter of Jackson* (258 N. Y. 281). The rule set forth and followed in these leading cases is that courts will presume or assume, if warranted by the circumstances, that a testator did

not intend to burden the life beneficiary with carrying charges unless it affirmatively appears that he did so intend.

In some instances (as in the present proceeding), the testator attempted to express his intent, but did so ambiguously. Cases of this complexion are: *Matter of Clark* (179 Misc. 75); *Matter of Mills* (148 Misc. 224); *Matter of John* (75 N. Y. S. 2d 693); *Matter of Tracy* (179 N. Y. 501); *Matter of Guggenheimer* (168 Misc. 1); *Matter of Jaeck* (42 N. Y. S. 2d 514); Matter of *Bowers* (270 App. Div. 1060 [3d Dept. 1946], affd. 296 N. Y. 1022), and *Matter of Bruckheimer* (38 N. Y. S. 2d 146, affd. 267 App. Div. 783, affd. 294 N. Y. 31).

In other cases, without the feature of an ambiguous testamentary expression, the same exception to the general or usual rule that normal carrying charges are at the expense of the life tenant or *cestui que trust* has been recognized and determined in varying situations where unproductive real property has constituted a relatively sizeable portion of the subject matter of a trust or legal life estate. Thus, even where words used by the testator susceptible to an interpretation favorable to the life beneficiary are lacking, the implied intent, in view of the surrounding circumstances, may be founded on silence as to the source of payment of carrying charges. In cases where there is a mandatory power of sale, or even only a permissive power, unexercised for a long period while real property remained unproductive, an equitable conversion, as of the time when the real property ought to have been sold, has been adjudicated. Typical cases of this variety are: *Matter of Manning* (165 Misc. 467); *Matter of Springs* (162 Misc. 204); *Matter of Shepard* (186 Misc. 564); *Matter of Satterwhite* (262 N. Y. 339), and *Matter of Kane* (180 Misc. 987).

This has been held so also where the real property was productive and remained so until some time after the testator's demise, but eventually became unproductive. (*Matter of Rowland,* 273 N. Y. 100; *Matter of Johnson,* 73 N. Y. S. 2d 621.)

Also, the general trend of both these related categories of cases supports the selection of specific items of carrying charges of real property practically as stated in the foregoing determination, viz., those, such as taxes and ordinary repairs, etc., which directly affect and tend to safeguard the preservation of future interests in real property of persons other than the life beneficiary. Notably, as to this limitation, see *Darling* v. *Rogers* (22 Wend. 483, 491); also, *Matter of Gabler* (140 Misc. 581, *supra*), and *Matter of Bruckheimer* (38 N. Y. S. 2d 146, *supra*).

Settle decree accordingly.