John J. Dillon, S.
In this third intermediate account of the proceedings of the surviving executor of the will of Bedros Kazanjian, Sr., questions of construction have been raised by the executors of the will of the decedent’s son, Bedros Kazanjian, Jr., and by the special guardian. The question arising out of the attempted exercise of the power of appointment conferred upon the son was resolved in a decision of this court dated February 7, 1958 (Matter of Kazanjian, N. Y. L. J., Feb. 11, 1958, p. 13, col. 6), in which it was held that there had been no valid exercise of the power. In view of the further contention made by the special guardian that the real property known as “ Fair Acres ” must now be sold, counsel were afforded an opportunity for additional argument, and the question is now to be determined.
The dispute involves an interpretation of Article ‘ ‘ twelfth ’ ’ of the will. In that article the testator provided in substance that his wife should have the right to occupy the residence known as “ Fair Acres” without rent or other charge and that during such occupancy all taxes and assessments thereon for permanent improvement should be paid by the executors out of the residuary estate as an expense of administration. A similar provision was made authorizing the continued occupancy of another house on the premises by the testator’s daughter. The will then proceeds as follows: “ I direct that the power of sale hereinabove given to the Executors shall not be exercised with respect to all of my real property, known as Fair Acres, for a period of one year after the date of my death, and thereafter shall not be exercised unless and until two of my three sons shall consent to such sale and shall file their written consents with the Executors.”
The testator died in 1937, and the widow has continuously occupied the residence on Fair Acres since that time. The property originally consisted of some 60 acres of land together with the two residences referred to in the will and perhaps other improvements. In 1945 this court was asked to construe Article “ twelfth ” of the will (Matter of Kazanjian, 53 N. Y. S. 2d 275), but only for the purpose of determining whether the premises might be sold without the consent of the widow and the daughter. The question was answered in the affirmative, and such determination was included in a decree dated April 32, 1945. Subsequently the executors sold the greater portion of the land, with the consent of two of the sons. The estate retains about 12 acres, upon which are situated the two houses mentioned in the will.
*232 The testator was survived by his three sons, Dikran, Andón and Bedros, Jr., and the two latter sons were appointed executors of the will. Bedros, Jr., died on February 22, 1957. The appointment of Dikran as successor executor was requested in the petition and was approved in the decision of February 7, 1958 (Matter of Kazanjian, supra). The point urged by the special guardian is that the sale of the balance of the real estate should now be directed by the court in the absence of consent by the two surviving sons.
The court has reached the conclusion that without the consent required by the will, it has no power to direct a sale. It seems probable, in the first place, that the question is already res judicata, since Surrogate Griffiths held in his opinion of March 1, 1945 (Matter of Kazanjian, p. 278, supra) that the power of sale given to the executors in Article “ eleventh ” of the will might be exercised after the expiration of one year from the date of the decedent’s death, “ subject only to the requirement contained in Article ‘ twelfth ’ that two of the decedent’s three sons consent thereto in writing.” It is true that the Surrogate commented in his opinion that under certain circumstances a discretionary power of sale of unproductive realty may be construed as mandatory. But the court was careful to point out that this may be done only in the absence of a clear testamentary direction to the contrary, and no conclusion was drawn that the power of sale in this case could be regarded as mandatory.
In any event, and wholly apart from the prior ruling, it seems clear that a judicial direction for the sale of the property without the consent of the two sons would utterly disregard the provisions of the will. It is evident that the testator was determined to protect the right of his widow to occupy the residence within reasonable limits. With that purpose in mind, he directed that the property might not be sold for one year after his death, and that it might not be sold thereafter without the written consent of two of his three sons. It can only be assumed that the testator adopted this latter device because he had confidence that his sons would protect their mother’s right to occupy the property unless in their judgment its retention should prove too great a drain upon the estate, in which event any two of them could authorize a sale. The court may not nullify a scheme so deliberately promulgated by the maker of the will. One of the sons is now dead, but two still survive, and the power of making the choice vests wholly in them. Should one or both of the survivors also die during the con *233 tiniiance of the trust, a further application may he made for instructions on the ground that the condition specified in the Avill had become impossible of performance.
The special guardian has argued that because the testator has said that the power of sale “ shall not be exercised with respect to all of my real property, known as Fair Acres ” (emphasis added), it follows that anything less than the whole of the property may and should be sold without the consent of the sons. This construction would nullify Article “ twelfth It would mean that all except some infinitesimal portion of the property could be sold without the required consents. The word “ all ” in this portion of the will must have been used in the sense of ‘ ‘ any ’ ’.
Since the will provides that during the continued occupancy of the property by the Avidow all taxes and assessments thereon for permanent improvements shall be paid out of the residuary estate as an expense of administration thereof, it follows that such expenses shall be paid out of principal. All other carrying charges shall be paid out of income. (Matter of Satterwhite, 262 N. Y. 339.)
Settle decree.