

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

October 5, 1964

Honorable J. N. Nutt
Commissioner of Insurance
State Board of Insurance
Austin, Texas

Opinion No. C-325

Re: Whether premium
notes executed by
Texas residents
constitute "Texas
Securities" within
the meaning of Art.
7064, V.C.S.

Dear Mr. Nutt:

We have your letter requesting our opinion concerning the interpretation of Article 7064, Vernon's Civil Statutes. You state: "A property-casualty company has filed a tax return under Article 7064, V.A.T.S., and among its 'Texas Securities' shown on the tax return the company has listed premium notes made by Texas residents." You request our opinion as to "whether or not premium notes executed by Texas residents constitute Texas securities within the meaning of Article 7064, V.A.T.S." You enclosed with your letter Commissioner's Order No. 15333 and a copy of two prior letters from the Attorney General addressed to your department which deal with premium notes.

Your Order No. 15333, dated January 15, 1964, rules that premium notes which meet certain standards shall be <u>admitted</u> assets of fire and casualty companies. The letter dated October 11, 1937, from the Attorney General to the Casualty Insurance Commissioner advised you that an insurance company may not lend money for the purpose of financing premiums on automobile insurance with such company since the lending of money for such purpose would not be a proper investment of the funds of such company. The Attorney General's letter of August 6, 1938, addressed to the Chairman of the Board of Insurance Commissioners, advised:

"In arriving at the judgment herein concerned, it was conceded by this Department that reciprocal exchanges may count premiums in course of collection

This letter and the judgment referred to therein will be given more attention below.

The first paragraph of Article 7064, subjects certain insurance corporations, including casualty companies, to a tax on the "total gross amount of premiums received on every kind of insurance or risk written, except premiums received from other licensed companies for reinsurance. . ." The second paragraph of Article 7064, provides for a graduated reduction of the tax rate on gross premium receipts. Under this provision the tax rate of the insurance organization is tied to "the amount that it had invested on the 31st of December, preceding, in Texas Securities as defined herein, and the amount that it had invested on said date in similar securities in the State in which it had its highest percentage of admitted assets invested. . . ." The third paragraph of said Article reads as follows:

"For the purposes of this Act, Texas securities are defined as real estate in this State; bonds of the State of Texas; bonds or interest bearing warrants of any county, city, town, school district or any municipality or subdivision thereof which is now or may hereafter be constituted or organized and authorized to issue bonds or warrants under the Constitution and laws of this State; notes or bonds secured by mortgage or trust deed on property in this State insured by the Federal Housing Administrator; the cash deposits in regularly established national or state banks or trust companies in this State on the basis of average monthly balances throughout the calendar year; that percentage of such insurance company's investments in the bonds of the United States of America, that its Texas reserves for the unearned premiums and loss reserves as may be required by the Board of Insurance Commissioners, are of its total reserves; but this provision shall apply only to United States Government bonds purchased between December 8, 1941, and the termination of the war in which the United States is now engaged; in any other property in this State in which by law such insurance carriers may invest their funds."

It is clear that premium notes do not come within any of the types of property enumerated by this statute except, possibly, the last type. Hence, the question is reduced to whether premium notes executed by Texas residents constitute "other property in this state in which by law such insurance carriers may invest their funds."

Our search for a complete list of such legal investments produces the following results:

Article 2.10 of the Texas Insurance Code reads, in part, as follows:

"No company except any writing life, health, and accident insurance, organized under the laws of this state, shall invest its funds over and above its minimum capital and its minimum surplus, as provided in Article 2.02, except as otherwise provided in this Code, in any other manner than as follows:

"1. As provided for the investment of its minimum capital and its minimum surplus in Article 2.08;

"2. In bonds or other evidences of debt which at the time of purchase are interest-bearing and are issued by authority of law and are not in default as to principal or interest, of any of the States of the United States or in the stock of any National Bank, in stock of any State Bank of Texas whose deposits are insured by the Federal Deposit Insurance Corporation; . . . /etc./

"3. In bonds or first liens or first mortgages upon unencumbered real estate . . . /etc./

"4. In bonds or other interest-bearing evidences or debt of any county, municipality, road district, . . . /etc./

"5. In the stocks, bonds, debentures, bills of exchange or other commercial notes or bills and securities of any solvent dividend paying corporation . . . /etc./

"6. In loans upon the pledge of any mortgage, stock, bonds or other evidence of indebtedness acceptable as investments under the terms of this Article, if the current value of such mortgage, stock, bonds or other evidence of indebtedness is

at least twenty-five per cent (25%) more than the amount loaned thereon;

"7. In interest-bearing notes or bonds of The University of Texas issued under and by virtue of Chapter 40, Acts of the 43rd Legislature, Second Called Session;

"8. In real estate to the extent only as elsewhere authorized by this Code;

"9. In insured accounts and evidences of indebtedness as defined and limited by Section 1, Chapter 618, page 1356, Acts of the 57th Legislature; in shares or share accounts as authorized in Section 1, page 76, Acts 1939, 46th Legislature; in insured or guaranteed obligations as authorized in Chapter 230, page 315, Acts 1945, 49th Legislature; in bonds issued under the provisions authorized by Section 9, Chapter 231, page 774, Acts 1933, 43rd Legislature; . . . /etc./"

Article 2.08, referred to above in Article 2.10, reads as follows:

"The minimum capital stock and minimum surplus of any such insurance company, except any writing life, health and accident insurance shall, following incorporation and granting of certificate of authority, consist only of the following:

"1. Lawful money of the United States; or

"2. Bonds of this state; or

"3. Bonds or other evidences of indebtedness of the United States of America or any of its agencies when such obligations are guaranteed as to principal and interest by the United States of America; or

"4. Notes secured by first mortgages upon unencumbered real estate in this state, the title to which is valid, and the payment of which notes is insured, in whole or in part, by the United States of America or any of its agencies, provided that

such investments in such notes shall not
exceed one-half (1/2) of the minimum capital stock
and minimum surplus of investing company; or

"5. Bonds or other interest-bearing evidences
of indebtedness of any counties, cities or other
municipalities of this state. . . ."

By the following statutes the respective types of property
are declared to be authorized investments for insurance companies.

1. Article 842a, V.C.S., securities issued by Federal
agencies;

2. Article 842a-1, V.C.S., obligations wholly or partially
insured by United States or state;

3. Article 1187a, V.C.S., bonds on bridges over navigable
waters;

4. Article 1269k-1, V.C.S., housing authority bonds
and obligation;

5. Article 2603d, V.C.S., bonds and notes on University
of Texas administration and library buildings;

6. Article 6795b-1, V.C.S., bonds on causeway bridges and
tunnels in Gulf Coast countries;

7. Article 7880-19a, V.C.S., bonds issued by Water Control
and Improvement Districts and municipal districts;

8. Article 8280-133, V.C.S., bonds issued by Sabine River
authority;

9. Article 8280-134, V.C.S., bonds issued by Lower Nueces
River Water Supply District;

10. Article 8280-137, V.C.S., bonds issued by Colorado
River Municipal Water District;

11. Article 8280-138, V.C.S., bonds issued by Jim Wells-
Duval Counties Conservation and Reclamation District;

12. Article 8280-139, V.C.S., bonds issued by Eastland
County Water Supply District.

We find no other statutes which deal with investments by casualty insurance companies. There are other statutes which deal specially with investments by other types of insurance companies, such as life, mutual and fraternal insurance companies, but they are not pertinent to your inquiry.

From these statutes it is obvious that the basic purpose of the Legislature in providing for investments by insurance companies was to provide a high degree of liquidity and safety. A premium note signed by a policyholder may or may not be collectible and, in our opinion, would not be an investment of the type contemplated by these statutes.

Article 7064, which established a tax rate and provides for tax-reducing investments, is a tax statute, and we are not authorized to resort to liberal construction in extending its exceptions. All doubts are resolved against the exemption. City of Longview v. Markham-McNee Memorial Hospital, 137 Tex. 178, 152 S.W.2d 1112 (1941). In Jones v. Williams, 45 S.W.2d 130, 121 Tex. 94, the Supreme Court said:

> "Exemptions from taxation are regarded not only as in derogation of sovereign authority, but of common right as well. They must be strictly construed, and not extended beyond the express requirements of the language used, . . ." (Emphasis theirs)

A further argument in favor of our conclusion is found in the language used in Article 7064. The "other property" provision of this article is strictly limited by its own terms to "property in this state in which by law insurance carriers may invest their funds." It is noteworthy that the Legislature did not say "other property which may be legally owned by insurance carriers." We think the presence of the word "invest" is significant. A closely related question was answered by the Attorney General in Opinion No. O-6539, approved June 4, 1945. In that opinion, it was held that furniture and fixtures belonging to a fire insurance company did not come within the definition of a tax reducing investments set out in Article 7064. That opinion concerned the construction of the meaning of the word "investment." Numerous definitions of the term were there quoted. A typical definition is that which the opinion quotes from In Re Pennocks Will, 35 N.E.2d 177, 285 N.Y. 475, as follows:

> "An 'investment' is generally defined as the conversion of money or circulating capital into

some species of property from which an income or
profit is expected to be derived in the ordinary
course of trade or business."

The opinion holds that the terms "invest" and "investments"
are used in Article 7064 in their ordinary connotation.  We see
nothing in the statutes above quoted that would justify any other
construction of the terms.  The fact that an insurance company may
legally purchase and own typewriters or office supplies does not
mean that these are tax reducing investments.  Similarly, the fact
that the company, as an incident to doing business, may extend
credit upon an open account or open note does not mean that it
has made a tax reducing investment within the meaning of the
statute.  Under the above mentioned statutes the only kind of a
note in which an insurance company may invest its funds is a secured
note.  Indeed, it may be said that if premium notes were construed
to be investments at all, it would put the company in a position
of having invested its funds in a manner violative of Article 2.10
of the Insurance Code.

In Lumberman's Insurance Company v. State of Texas, 364
S.W.2d 429 (Tex.Civ.App. 1963, error ref. n.r.e.), the company
invested funds in the stock of a corporation which had been in
existence less than five years prior to the investment as required
by Subdivision 5 of Article 2.10.  The trial court held the
investment to be unlawful, thus rendering the company insolvent
and subject to the receivership.  This decision demonstrates the
reluctance of the courts to liberalize this particular tax
statute.

The case of Board of Insurance Commissioners v. Highway
Insurance Underwriters, 169 S.W.2d 541 (Tex.Civ.App. 1943) may appear
to have implications contrary to the conclusion we have reached,
but we believe there is no conflict.  As the opinion there
specifically points out, the trial court had entered a consent
judgment holding, among other things, that premium notes were tax-
reducing investments of reciprocal and inter-insurance exchanges.
The trial court also held in favor of intervenors, insurance carriers
other than those in whose favor the agreed judgment had been entered.
On appeal from the judgment in favor of the intervenors the question
was raised as to whether this was a class action judgment which
inured to the benefit of other insurance carriers, including the
appellees.  The Court of Civil Appeals held that it was  a class
action, affirming the trial court judgment on this point, but
reversing it on other grounds.  The Court was not called upon to

pass upon the correctness of the terms of the agreed judgment. The Court quoted in its entirety the Attorney General's letter dated August 6, 1938, referred to above, which had been written after the trial court had entered the agreed judgment. Whatever dignity that letter was intended to be given by the court and whatever else may be said about it in connection with our question, we think that it carefully limits the terms of the agreed judgment in question to reciprocal exchanges, which, the letter says, were not restricted by any then existing statutes defining the property in which reciprocal exchanges might invest their funds. The letter then says:

> "As a general proposition, premiums in course of collection are valuable credits and therefore constitute property in the broadest sense of that term. In a broad sense, investments include credits or property other than cash; therefore in the present state of the laws, it is believed that premiums in the course of collection are to be regarded as tax reducing investments insofar as reciprocal exchanges are concerned."

We believe that this part of the letter is unsound. The views expressed by the above mentioned Attorney General's Opinion No. O-6539, approved June 4, 1945, (after the above mentioned case was decided) are sound and are in line with the accepted definitions of the terms "invest" and "investment." We find no support of the "broad" definition of these terms, and, as pointed out above, in dealing with a tax statute we are not authorized to resort to liberal or broad construction in favor of the person or property subject to the tax statute.

The purpose of the gross receipts tax statute (Art. 7064) is to encourage, by offering a lower tax rate, those insurance carriers subject to the Act to make investments in Texas securities and property. Kansas City Title Insurance Co. v. Butler, 253 S.W.2d 318 (Tex.Civ.App. 1952, error ref. n.r.e.); Board of Insurance Commissioners v. Prudential Fire Insurance Company, 167 S.W.2d 578 (Tex.Civ.App. 1942, error ref. n.r.e.). It is clear that this Legislative intent would not be enhanced by including premium notes among the tax reducing investments, and we do not believe that they were intended by the Legislature to be included in any of the carefully defined types of property listed in the above mentioned statutes.

For all of the reasons set out above we have concluded that premium notes executed by Texas residents do not constitute "Texas Securities" within the meaning of Article 7064, Vernon's Civil Statutes.

### S U M M A R Y

Premium notes executed by Texas residents do not constitute "Texas Securities" within the meaning of Article 7064, V.C.S.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

RALPH R. RASH
Assistant Attorney General

RER:ss

APPROVED BY OPINION COMMITTEE:

W. V. Geppert, Chairman
Joe R. Long
James Strock
Pat Bailey
Jack Goodman

APPROVED FOR THE ATTORNEY GENERAL
BY ROGER TYLER